THE ATCHISON, TOPEKA & SANTA FE RAILROAD
COMPANY v. ALICE SHAW.

No. 8110.

56   519
56   762

56   519
78   281

1. RAILROAD-CROSSING ACCIDENT—*Automatic Gates—Pleading and Proof.* In an action against a railroad company to recover damages for injuries received by the plaintiff at a street crossing in a populous city, where the only negligence charged is in the management of the engine and cars by the employees of the company, it is not proper to admit testimony showing that the company was required by a city ordinance to maintain automatic gates at the crossing, and that it failed to do so, nor for the court to instruct the jury that such failure would be negligence on the part of the company; but where it is clear, from the uncontradicted testimony in the case, that the injury was caused by the gross negligence of the employees in the management of the engine and cars, and that the testimony with reference to the absence of gates did not influence the jury, the verdict and judgment will not be set aside because of the failure of the plaintiff to allege in her petition the failure to maintain gates as a ground of negligence.

2. CONTRIBUTORY NEGLIGENCE—*Question for Jury.* Where a street in a city is crossed by numerous railroad tracks, it cannot be declared, as a matter of law, that the plaintiff was guilty of contributory negligence in driving across the tracks on a slow trot, when the testimony shows that no engine was in sight, and that there was nothing else apparent indicating danger, and where it is shown that the plaintiff was vigilant in the use of her senses in endeavoring to detect danger. In such a case the question of contributory negligence should be left to the determination of the jury.

3. SPECIAL QUESTIONS—*What Sort to be Submitted.* The trial court is not bound to compel direct answers to all questions that a party may propound to the jury. It is only fair and pertinent questions, that can be truthfully answered under the testimony, that a party may insist upon having answered as a matter of right.

*Error from Sedgwick District Cout.*

THIS action was brought by Alice Shaw to recover damages for injuries received while crossing a railroad track in the city of Wichita. The plaintiff and Mrs. Frazer, with her baby, were in a spring wagon passing along First street. Near the intersection of

First street and Fifth Avenue, First street crosses a number of railroad tracks. The west one, where the plaintiff was injured, is called the "Hawn track." About 53 feet east from this is what is termed the "Wichita & Western track," and about 15 feet from that is the main track. There were many cars standing on the various tracks at the time, the Wichita & Western track being nearly filled with cars. On the Hawn track there were about 15 freight cars. There was an engine in the vicinity of Second street, which is the next street north from First street, and distant about 600 from it, engaged in switching cars onto the Hawn track. The train crew consisted of an engineer, fireman, foreman, and two others. The testimony all shows that the engineer and fireman were on the engine; that a man named Lee was stationed near the switch-stand connecting the Hawn track with the Wichita & Western. As to the location of the other two men at the time the plaintiff was hurt the evidence is somewhat conflicting, but it appears that McCambridge, the foreman, was down near First street, and that he went between the cars to which the engine was attached and other cars which were standing near First street to make a coupling. The foreman testified that he himself stood within 30 feet of First street, and that the other man, whose name he did not remember, but whom he calls "Flatty," was located in the center, between himself and Lee. It seems clear from all the evidence that the name of the man he calls "Flatty" was Ingram, and, according to his testimony, he was then just south of the place where the accident occurred, about to make a coupling between the car that struck the plaintiff and another car south of First street. From the testimony of the plaintiff and

Mrs. Frazer, it appears that, as they approached the track, the speed of the horse was slackened; that they both looked up and down the tracks to see if there were any engine or cars approaching; that they saw many cars on the various tracks, but did not see any engine. They passed along the street across all the tracks but the last one on a slow trot. As the horse was about to step on the Hawn track, they noticed that a car which had been standing partly in the street began to move. It appears that about this time a person standing on the sidewalk on the north side of the street called to them, and there is some testimony that Ingram, McCambridge, and Ruggles, a car sealer, also called to them before they came to the track, but they did not hear any of the warnings. They urged the horse forward, deeming it the safer course to pursue. The hind wheels of the buggy were struck by the car, and the plaintiff was thrown forward to the ground near the horse's feet and hurt. The testimony of the engineer shows that he received no signal at the time the buggy was struck, nor until he stopped; that he stopped "for the reason that he felt the cars strike against something. I backed up until I felt the cars strike, and then stopped." Other testimony shows that a bolt on the corner of a car caught the felloe of the hind wheel of the buggy, holding it fast, and that it was shoved back by the moving car until it struck the platform of the Zephyr mill, which was located west of the track, on the south side of First street. The cars moved on some distance past the north end of the mill platform.

The jury rendered a general verdict in favor of the plaintiff for $5,000, and by their special verdict they stated that $1,000 of this amount was allowed as exemplary damages. Motions were made for judgment

in favor of the defendant on the special findings of the
jury, and for a new trial.   The motion for judgment
was overruled, and on the hearing of the motion for
a new trial the plaintiff remitted the $1,000 allowed
as exemplary damages, and thereupon that motion
also was overruled, and a judgment entered on the
verdict for $4,000.   The defendant brings the case
to this court.   The opinion herein was filed March
7, 1896.

*A. A. Hurd*, and *F. W. Bentley*, for plaintiff in error.

*Smith & Douglass*, and *Holmes & Haymaker*, for de-
fendant in error.

The opinion of the court was delivered by

ALLEN, J. : The errors assigned are very numerous.
We have examined them all, but deem it unnecessary
to make mention of any but the principal questions
presented.

I.   It is said that the negligence charged was that
"the engineer and servants in charge of said train,
suddenly, carelessly, and with gross negligence,
backed said train across said highway, striking the
wagon in which said plaintiff was riding."   On the
trial, the plaintiff offered in evidence an ordinance of
the city of Wichita, requiring the defendant to main-
tain and operate automatic gates at all street cross-
ings where there were two or more tracks.   This was
objected to by the defendant, but the objection was
overruled.   The plaintiff proved, without objection,
that no gates were maintained, and that no flagman
was stationed at the crossing, and the court instructed
the jury that if they found that an ordinance required
the defendant to maintain gates across First street,
that the defendant failed to comply with the ordi-

nance, and that such failure was the proximate cause of the injury, the defendant would be liable for the damages resulting from it. The jury, in answer to the forty-fifth question, find that it was negligence on the part of the company not to maintain automatic gates at this crossing. The failure to maintain gates at a crossing where the city ordinance required them might be, of itself, such negligence as would render the company liable for an injury received by a person crossing the track, and where the failure to maintain the gates is relied on as the ground of recovery it ought to be alleged in the petition. A careful examination of the whole case presented convinces us, however, that the jury were not influenced by this testimony. The failure to maintain the gates was not relied on for a recovery. There was an abundant showing of negligence without it.

The forty-fourth special question submitted by the defendant was, "Q. Do you find that the defendant caused plaintiff's injury by wilful and wanton negligence? A. Yes." We think the testimony of the witnesses for the defendant, and especially that of the engineer, shows that the switching crew were not only guilty of negligence, but of very gross negligence. The car which struck the wagon was standing, as the jury find, 15 to 18 feet south of the north line of First street. The engineer testifies that he could not see the rear cars because of cars on the Wichita & Western track. It is clear from all the evidence that no person was stationed upon or near the car which caused the injury, either to observe and warn persons passing along the street, to regulate the movement of cars, or to give signals to the engineer; nor were there trainmen so stationed along the train that signals could be readily transmitted to the engineer by any one on the ground

near First street. The foreman was operating in utter disregard of the safety of persons passing along the street, and we think the finding of the jury of wanton negligence in the management of the train is not only abundantly sustained by the evidence, but is uncontradicted by any witnesses except McCambridge himself, and even his testimony fails to show that he was taking that care which ought always to be taken under similar circumstances.    Under this state of facts, the error with reference to the gates appears unimportant.

II.  The claim that the plaintiff was guilty of contributory negligence as a matter of law, merely because the horse passed along the street on a slow trot, cannot be sustained.    Her conduct was of course a proper subject of consideration by the jury, and the question whether she acted with ordinary prudence was fairly submitted to them, and their finding was in her favor.    As the car which caused the injury was standing still until the horse was almost upon the track, and as the engine which propelled it was a long distance away, out of sight, and especially as no trainman was in sight to give any warning that the car was likely to move suddenly, we are unable to perceive anything in the conduct of the plaintiff sufficient to bar her recovery, and certainly not in opposition to the finding of the jury.

III.  At the request of the defendant, 52 special questions were submitted to the jury.    They were not all answered when first returned into court, and the jury were again sent out.    As the verdict was finally received, the eighth, fifteenth, thirtieth, thirty-first, thirty-second and fiftieth questions were answered "Don't know."    Numerous cases are cited to the effect that these answers are improper, and that the court should have required the jury to return proper

answers to them.    It is only pertinent, properly framed
questions, which can be intelligently answered from
the testimony, that the court is required to compel an
answer to.    We do not deem it of any general interest
to enter into a minute analysis of these questions, or
of the testimony bearing on them, but shall content
ourselves with the remark that the answers are fairer
than the questions, and about as good as could be
given under the testimony.    The twenty-eighth ques-
tion and answer were : ''Was there anything to pre-
vent plaintiff from seeing the engine when 110 feet
from the main track, if she had looked in its direction?
A. We cannot answer, as no direction is given.''
There is very little significance in this question, and
we think the answer is only subject to criticism be-
cause of the concluding portion of it.    What the jury
doubtless meant is, that, from the testimony, the ex-
act direction of the engine from the point named,
when the plaintiff passed it, could not be determined,
and we think this is the truth.

IV.  It is claimed that the damages are excessive,
given under the influence of passion and prejudice,
and reference is made to the finding that the de-
fendant was guilty of wanton and wilful negligence,
and awarded $1,000 exemplary damages, as evidence
thereof.    There was a great deal of testimony by phy-
sicians with reference to the nature of the plaintiff's
injuries.    That she was severely hurt and rendered
delirious several days is beyond dispute.    Whether
her injuries are of a permanent character, and such
as the testimony in her behalf tended to show, was a
proper matter for the consideration of the jury, and
we find nothing in the award of damages to shock our
sense of right, nor are we at all clear that this was not
a proper case for exemplary damages.

V. Many questions were raised on the introduction of testimony, and are urged in the brief, but we find nothing we deem reversible error, nor worthy of special mention. Numerous criticisms of the instructions are made, but on the whole we think the case was fairly submitted, and that the verdict was right.

The judgment is affirmed.

All the Justices concurring.