THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. GEORGE E. HINDS et al., as Administrators of the Estate of Joel Hinds, deceased.

No. 8394.

1. RAILROAD TRACK—Obstructed View—Duty to Stop, Look, and Listen. Where the evidence shows that the view of a railroad track is so obstructed by sunflowers, negligently permitted to grow on the depot grounds of the railway company, that a traveler driving a team along the highway could not see an approaching train until nearly on the track, but it does not appear that he could not have heard the whistle if it had been sounded at suitable distances from the crossing, it cannot be declared, as a matter of law, that it was the duty of such traveler to stop before driving upon the track.

2. ———— View Obstructed—Operating Trains—Duty of Company. Where the railway company permits needless obstructions to the view on its depot grounds, it is its duty to operate its trains with reference to such obstructions, and in such manner that travelers crossing the track on the highway, from which the view is so obstructed, may, by the exercise of ordinary care, avoid injury from such trains.

3. ——— *Crossing Track—Presumption.* In the absence of evidence to the contrary, it will be presumed that a person about to cross a railroad track both looked and listened for an approaching train before venturing on the crossing.

*Error from Clay District Court.*

JOEL HINDS was killed at a crossing of the public road over the Chicago, Rock Island & Pacific railway at Broughton, Kan., on July 11, 1891. This action was brought by the defendants in error, as administrators of his estate, against the railway company to recover damages, on the ground that his death was caused by the negligence of the railway company. The crossing, according to the findings of the jury, was about 485 feet west of the west end of the depot at Broughton. The depot is located on the north side of the main track, and north of the depot is a side-track, which, at the time of the accident, was filled with box cars. The depot grounds are 100 feet wide north of the main track, and extend up to the public road on which deceased was driving. This road runs north and south, and is crossed by the railroad at such an angle that the distance from the main track to the outer edge of the depot grounds, measured along the highway, is about 115 feet. The depot ground adjoining this part of the road was covered with a thick growth of tall sunflowers, which obscured the view of the railroad track to the east to such an extent that a person coming upon the railroad track from the north, after reaching the depot grounds, could not see the track a distance of 25 yards eastward until the heads of his horses were over the edge of the track. At the time Hinds was killed the wind was blowing very hard from the southeast. He was driving a team of horses, and approaching the crossing from the north. When he

first came in sight of the crossing he was driving on a brisk trot, but as he came nearer he checked the speed of the horses. A train consisting of two dirt-cars, a water-tank car, engine and tender, running backward at the rate of about 30 miles an hour, passed along just in time to strike Hinds as he drove on the track. The jury find, in answer to special questions, that the deceased looked and listened to ascertain whether a train was approaching, but did not stop. Among others, the following instructions were given:

"6. I further instruct you, that when a railway creates or suffers to exist an obstruction to the view at or near a public highway crossing, the company must then use such care in operating its trains that, notwithstanding such obstruction, a traveler on the highway may, by the use of ordinary care, avoid a collision at such crossing; and if in this case you believe from the evidence that the view in the direction from which the train was coming which caused the death of the deceased was obstructed by the railway company by its suffering and permitting a thick growth of tall weeds to stand on its right of way at or near said crossing, and by its suffering and permitting a long train of box cars to stand on the side-track at or near said crossing, then it was the duty of the railway company to use such care and caution in operating its trains that, notwithstanding such obstruction, the deceased, by the use of ordinary care, might have avoided the collision which resulted in his death."

"9. I further instruct you, that in the absence of any evidence as to whether or not the deceased looked and listened when approaching the crossing in controversy, the law presumes that, from the natural instinct of every one to protect his person from injury, and to preserve his life, he both looked and listened for an approaching train before venturing on said crossing.

"10. I further instruct you, that the burden of

proof rests upon the defendant to prove that the deceased did not observe such precautions as were necessary in the exercise of ordinary care under the circumstances which surrounded him as he was approaching the crossing in controversy, and that the collision which resulted in his death was caused by his failure to exercise such ordinary care, or, in other. words, that his death was the result of his own negligence."

The following instruction, asked by the defendant, was refused :

"8. The court instructs the jury, that if you believe from the evidence that the deceased neither stopped his team nor made any efforts to see or hear the train before he drove on the railroad track, and if you further believe that, if he had stopped and looked and listened, he could have seen and heard the train, then your verdict must be for the defendant."

The jury returned a verdict in favor of the plaintiffs for $5,000 damages, on which judgment was entered. To reverse this judgment the railway company brings this proceeding in error.    The opinion herein was filed May 9, 1896.

*M. A Low*, and *W. F. Evans*, for plaintiff in error.

*F. B. Dawes*, for defendants in error.

The opinion of the court was delivered by

ALLEN, J. : I. The principal contention of the plaintiff in error is, that it was the duty of the deceased, Hinds, to stop before attempting to cross the railroad track, under all the circumstances of the case.    It is admitted on both sides that the track on which the train was approaching was completely obscured by the rank growth of sunflowers from the view of a traveler approaching on the highway, and that a very high wind was blowing at the time, which rendered it difficult

to hear.   Under these circumstances, it is contended that the court should declare, as a matter of law, that it was the duty of the deceased to stop, and that, having failed to do so, he was guilty of contributory negligence barring a recovery.   It would serve no purpose to review the authorities from other states cited in support of this contention.   Under the prior decisions of this court, it was a question to be determined by the jury under proper instructions. (*A. T. & S. F. Rld. Co. v. Morgan*, 43 Kan. 1; *A. T. & S. F. Rld. Co. v. Hague*, 54 id. 284; *C. R. I. & P. Rly. Co. v. Williams*, ante, p. 333; *A. T. & S. F. Rld. Co. v. Shaw*, ante, p. 519, 43 Pac. Rep. 1129.)

The jury find that the train which caused the death of Hinds was running at the rate of 30 miles an hour. It is not shown that such warnings by sounding the whistle, ringing the bell, or both, were given, as the state of the weather, the surroundings of the crossing and the speed of the train rendered necessary, or that Hinds could not have heard such signals in time to avoid injury if they had been duly given.   In order that we may declare that it was negligence, as a matter of law, for him to fail to stop, there must be an evident necessity under the circumstances that he should stop, and this must be made so certain that the minds of reasonable men would not differ in regard to it.   A reasonable man would hardly expect to meet a train running backward past a depot at so high a rate of speed, where the track was obscured, without any warning of its approach.

II.  The tenth instruction, imposing the burden of proof of contributory negligence on the defendant, is criticized, because it is claimed that contributory negligence was shown by the evidence on behalf of the plaintiffs.   The rule of law declared by the court is

well settled. (*K. P. Rly. Co. v. Pointer*, 14 Kan. 37 ; *K. C. L. & S. Rld. Co. v. Phillibert*, 25 id. 582 ; *St. L. & S. F. Rly. Co. v. Weaver*, 35 id. 412 ; *Mo. Pac. Rly. Co. v. McCally*, 41 id. 639.) The instruction criticized does not state in terms that in determining this question the jury may not consider evidence offered by the plaintiffs tending to show contributory negligence, and by other instructions the jury were plainly told that if the deceased was guilty of negligence the plaintiffs could not recover, and that they were to determine this question from all the evidence in the case. The sixth instruction is a correct statement as to the duty of the company in operating its trains, when it suffers the view of its track from the public highway to be obstructed. It is not open to the objection that it declares the railway company liable absolutely where it permits such obstruction, if the party injured exercises ordinary care. The instruction is rather an abstract statement of the duty of the company under such circumstances than a direct application of the law to the case under consideration. It cannot be doubted that when a railway company negligently permits a growth of sunflowers on its depot grounds, which obstructs the view of persons approaching the track on the public highway, it then becomes its duty in operating its trains to use such precautions that a traveler on the highway may by the use of ordinary care cross the track in safety. But, of course, the plaintiffs who seek to recover damages can only do so on the ground that the railway company has been negligent in some particular, and that that negligence was the proximate cause of the death of Hinds. The other instructions given by the court were very full, clear, and fair, and there is noth-

ing in this one which could have misled the jury, when taken in connection with the rest.

III. The ninth instruction is a correct statement of the law, and is applicable to the facts in this case. It is true that there was uncontradicted evidence that the deceased looked to see whether there was a train approaching, and that there was therefore no occasion for resorting to a presumption on that point, but the instruction could not possibly have harmed the defendant in that particular. There was no evidence whether the deceased listened or not, for there was no person in a position to know that fact. 'As to this matter, the instruction with reference to the presumption was applicable and right. Ordinary negligence is the want of ordinary care, and ordinary care is such care as people of ordinary prudence usually exercise under like circumstances. The very definition of ordinary care implies a presumption that it will usually be exercised. It is because people ordinarily, in crossing a railroad track, look and listen for their own protection that a failure to do so is held to be negligence. It can never be presumed, in the absence of evidence, that a person fails to do that which people ordinarily do to avoid injury. (*Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586.) There was no error in refusing the eighth instruction. For the reasons stated in considering the other assignments of error, the court did not err in refusing to enter judgment in favor of the defendant on the special findings, nor in refusing the motion for a new trial.

The judgment is affirmed.

All the Justices concurring.