THE WICHITA & WESTERN RAILROAD COMPANY V. C.
R. COOK, *Administrator of the Estate of* H. L. BALL,
*deceased.*

### No. 275.

1. CONTRIBUTORY NEGLIGENCE—*Refusal to Instruct.* Where, in an action for damages occasioned by the alleged negligence of the employees of a railroad company in causing an engine to collide with a team and wagon at a crossing, the defense was the contributory negligence of the driver of the team in failing to use due precaution in looking and listening before going upon the railroad; and where the evidence showed that the crossing was peculiarly dangerous, under the circumstances of the case, and that the driver did not know the engine was approaching until he was within less than fifteen feet of the crossing: *Held*, Error to refuse an instruction to the effect that it was the duty of the driver to exercise such precaution before going upon the crossing.

2. ———— *Proximate Cause of Injury—Erroneous Instruction.* Where the negligence, if any, of the driver of the team proximately contributed to the injury complained of, *held*, error for the court to conclude an instruction as to contributory negligence of the driver with the language, "unless you further find that the negligence of the plaintiff or his employee was slight and did not contribute directly to the injury complained of, in which event your verdict should be for the plaintiff." (*C. K. & W. Rld. Co. v. Prouty*, 55 Kan. 504.)

Error from Kingman district court; W. O. BASHORE, judge.   Opinion filed March 14, 1898.   Reversed.

*Fred. W. Bentley*, for plaintiff in error.

*Hay & Hay*, for defendant in error.

The opinion of the court was delivered by

MILTON, J. : In this action, which was begun by H. L. Ball before a justice of the peace of Kingman county, the bill of particulars alleged, in substance, that the servant of the plaintiff was driving a team consisting of two horses and two mules hitched to a wagon, the property of plaintiff, on a traveled road

from plaintiff's premises toward the city of Kingman ;
that the road passed over the railroad track of the de-
fendant company at a regular crossing about sixty
rods east from the depot building in said city ; that
when the plaintiff's servant reached the crossing, the
servants and employees of the railroad company in
charge of and operating one of its engines on its track,
negligently and carelessly, without giving any signal
or warning with bell, whistle, or otherwise, suddenly
backed the engine rapidly over the crossing, and there
struck with great force and violence the team and
wagon, killing one mule and destroying the wagon, to
the damage of the plaintiff in the sum of $190.   It
was also alleged that the driver of the team was
unaware of the approach of the engine or train on
the track at that time and place ; that he barely es-
caped disaster by jumping from the wagon a moment
before it was struck by the engine ; and that the plain-
tiff and his servant were entirely without fault in the
premises.   From a judgment rendered by the justice
of the peace in favor of the plaintiff for the amount
claimed the company appealed to the district court,
and thereafter filed its answer, which, in addition to
a general denial, averred that the injuries complained
of resulted from the negligence of the plaintiff, in
that his servant ventured ''carelessly, negligently and
blindly upon the defendant's railroad track and the
said crossing without making vigilant use of his
natural senses of sight and hearing, and without lis-
tening and looking to determine whether there was a
moving engine or train in dangerous proximity.''

Before the trial of the case in the district court the
plaintiff died, and the action was revived in the name
of C. R. Cook, as administrator.   It appears that one
Kairns, the driver of the team mentioned, had hitched

Railroad Co. v. Cook.

two mules to the wagon and had fastened to the harness of one of them another mule, and to that of the other a horse, to be led by their halters, and that he then started from Ball's house, which was about 600 feet south of the main line of the railroad track and about 450 feet east of the crossing mentioned, and drove in a northeasterly direction towards the crossing. A side-track lay fifteen feet south of the main line at that point, and immediately south of the side-track were the company's stock-yards, the chute of which extended north very nearly to the side-track. The road Kairns passed over branches near the southwest corner of the stock-yards, one part running thence due north about 120 feet, and within a few feet of the west side of the stock-yards, to the crossing, and the other passing westerly towards the depot.

A new engine just received at the roundhouse in Kingman was being tested by an expert engineer, who represented the Baldwin locomotive works, on the track east of the depot. It was headed east and had been run about half a mile in that direction, and was being run backward when it collided with the team and wagon. Several freight-cars were on a siding immediately east of the crossing and north of the stock-yards, thus obstructing the view of a person approaching from the south. West of the stock-yards was unenclosed land. A moment before the collision Kairns discovered his peril and jumped from the wagon. The team had then become frightened at the approach of the engine and the two animals which were being led sprang in front of the others and over the crossing, one breaking its halter fastening and the other turning around until it faced the wagon at the time the engine came upon them. A witness for the plaintiff testified that she saw the team and the engine for

some time before the collision, and that the team walked from the southwest corner of the stock-yards up to and upon the crossing where it was struck; that the engine was running very fast and that it did not make any sound with bell or whistle. Another witness testified that the team was walking at the time of the collision, and that the bell was not being rung nor the whistle blown just prior to the occurrence.

On the other hand, Kairns testified that when he was at the southwest corner of the stock-yards the team took fright at the sound of the engine bell and began to run, and that by reason of his having no control over the led animals he was unable to stop the team or to turn them into the open space west of the stock-yards, and was therefore forced to abandon such efforts. He stated that he knew the engine had moved toward the east, but he did not know how far it had gone, and had not noticed it returning toward the west. The jury found that the engine was running at a rate of about seven miles an hour when it struck the team; that the negligence of the company consisted in its failure to ring the bell while approaching the crossing, and that the negligence of the plaintiff and of the driver of the team did not in any way contribute to the injury. They also found that the crossing was in general use by the public. The latter finding is clearly sustained by the evidence, which shows that a regular warning post had been set up by the company at the crossing. The sixth instruction given to the jury reads:

"If you find from the evidence that there was negligence on the part of the defendant, its agents or employees, you should inquire further as to whether there was contributory negligence on the part of the plain-

tiff or his employee.   And if you find there was con-
tributory negligence on the part of the plaintiff or his
employee, you should return a verdict for defendant,
unless you further find that the negligence of the
plaintiff or his employee was slight, and did not con-
tribute directly to the injury complained of, in which
event your verdict should be for plaintiff.''

An instruction asked for by the defendant and re-
fused is as follows :

''As to the question of the plaintiff's contributing
to the said injury, you are instructed that before a
person can recover for damages caused while crossing
a railroad at a public crossing or street he must, be-
fore attempting to cross, recognize the danger, and
make use of the senses of sight and hearing in deter-
mining whether a train is in dangerous proximity ;
and if he neglect this duty, and venture blindly upon
the track without an effort to ascertain whether a train
is approaching, he does so at his peril.''

It is evident that the jury disregarded the testimony
of the witness Kairns.   Adopting the theory of the
plaintiff below that the bell was not rung, and that
the team *walked* from the southwest corner of the
stock-yards to and upon the crossing without being
stopped, and keeping in view the fact that the crossing
was then peculiarly unsafe for a person coming from
the south, and that of the so-called four-horse team
three were mules; and only two subject to any control
whatever by the driver, we think the instruction asked
for should have been given, and that its refusal was
error.   The driver was not able to see the approach-
ing engine after he turned toward the track, on ac-
count of the stock-yards and the freight-cars.   He did
not stop to listen, but went on, as the testimony in-
dicates, unheedingly.   The supreme court has said :
'' In the absence of evidence to the contrary, it will

be presumed that a person about to cross a railroad track both looked and listened for an approaching train before venturing on the crossing." (*C. R. I. & P. Rly. Co. v. Hinds*, 56 Kan. 758.)

The court was considering a case in which a person was fatally injured, and no positive testimony as to his conduct immediately prior to his injury had been produced. Here we have positive testimony, and it is the evidence upon which the plaintiff's case rests, that the driver and the team went directly toward and upon the track, and nothing indicates that the driver was either looking or listening for an approaching train. We have his positive statement that he heard the engine coming, and that his team became frightened at the sound of its bell when 100 feet away from the crossing. If his account be accepted, of course the verdict is wrong; and if his statement be rejected, there is no presumption arising from the facts proven that he did look and listen. At any rate, the court ought to have given the instruction substantially as requested, to the end that the jury might have been properly guided in their deliberations.

The undisputed evidence that Kairns jumped from the wagon just before it was struck proves one of two propositions: either the team was running away, as he testified, or he had not looked and listened for the approaching engine, and was taken wholly unawares when it suddenly came into view as he neared the crossing. Not hearing, under the circumstances, indicated not listening. The jury should have been advised respecting this matter.

As to the instruction quoted above in which the court directed the jury in regard to contributory negligence, we think it probable that it misled the jury. The supreme court, in the case of *C. K. & W.*

Railroad Co. v. Cook.

*Rly. Co. v. Prouty*, 55 Kan. 503, held that where the decedent's negligence, if any, was clearly proximate and directly contributing to the injury, it was error to charge the jury that if his negligence was the remote cause of the injury the plaintiff might still recover.  In that case the deceased was riding in a wagon drawn by a team of horses which he was driving.  A passenger-train approached rapidly from behind him, frightening the team and causing them to become unmanageable.  They ran along the railroad ahead of the train until it was very near, when they suddenly dashed upon the track, causing their own destruction and the death of the driver.  The alleged contributory negligence of the deceased, in not sooner discovering the approach of the train and in his manner of driving, was the principal defense of the railway company.  The court gave an instruction quite similar to that which we are considering.  What the supreme court said in that case can well be said here.  If there was any negligence on the part of Kairns, by reason of his failure to look and listen before driving upon the railroad crossing, it was the proximate cause of the injury which resulted from such failure.  It was therefore error to charge the jury in respect to slight negligence on the part of the plaintiff or his employee.

Counsel for the defendant in error contend that the instructions refused cannot properly be considered by us as the request for them was not signed by counsel for the railroad company.  Decisions of the supreme court of Indiana and Colorado are cited to support this contention, and also a decision of our supreme court, in the case of *Tays v. Carr*, 37 Kan. 141.  A careful reading of the latter case will show that the court did not decide that instructions which the

court had refused and so marked were not review-
able because not signed by the party requesting the
same.    The record in this case shows that the instruc-
tions asked for by the defendant were severally re-
fused by the trial court and so marked, and each of
them is followed by a statement to that effect which
is signed by the trial judge.    It is not necessary to
refer to other questions presented in the brief of
counsel.

The judgment of the trial court is reversed, and the
cause remanded for a new trial.