THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY V. HENRY HANSEN, as Administrator, etc.

No. 15,464.    (96 Pac. 668.)

SYLLABUS BY THE COURT.

PERSONAL INJURIES—*Injury at a Railway Crossing—Contributory Negligence.*   A traveler about to cross a railroad track upon a public crossing is not guilty of contributory negligence for failing to take precautions against a danger not open to observation and of which he is ignorant.

Error from Smith district court; RICHARD M. PICKLER, judge. Opinion filed June 6, 1908. Affirmed.

STATEMENT.

ON the evening of March 4, 1904, C. Hansen, while attempting to cross the Chicago, Rock Island & Pacific railroad at a road-crossing about five miles west and south of Smith Center, was killed, and his administrator commenced this action in the district court of Smith county to recover damages sustained by the next of kin on account of such death. The deceased was a farmer, residing near Cedarville, in Smith county. He had been at Smith Center in a lumber-wagon drawn by a team of horses, and was returning home. The public road, at the crossing where the deceased attempted to cross, descends a steep decline in a cut to the railroad track, which makes it impossible for a traveler, after passing a point 245 feet from the crossing, to see a train approach until he is within twenty-one feet of the railroad track. The deceased was struck and killed about eight o'clock in the even-

ing, after dark, on a dark night. At the point on the crest of the hill 245 feet from the crossing, and where the road enters the cut descending to the railroad track, a headlight on a train approaching from the direction in which the train in question came could be seen half a mile or more away. Photographs were taken of the track from several different points and measurements were made which indicate that the track or a train could be seen at distances varying from 1200 feet to several miles from the crest of the hill. These observations were made, however, in the daytime, and are useful here only so far as they indicate the configuration of the ground.

The deceased was riding in an ordinary farm lumber-wagon, having two sets of sideboards. He sat in a spring-seat, which was on the bottom of the box, with its back against the right side. At the crest of the hill the team was traveling west, which made the range of the deceased's vision toward the south and east, from which direction the train which struck him approached. The location of the train when the deceased was on the crest of this hill, and whether or not he might have seen it by looking, are matters of speculation and inference. It does not appear that the deceased was familiar with the peculiar dangers of this crossing or that he had ever crossed there before. At the trial special findings of fact were returned by the jury, which read:

"(1) Ques. At what rate of speed was the train in question running at the time of the accident? Ans. Thirty miles an hour.

"(2) Q. Was the headlight on the train which struck the deceased burning at the time of the accident? A. Yes.

"(3) Q. Did the deceased have his coat-collar turned up around his ears at the time of the accident? A. No.

"(4) Q. Did the deceased have a muffler wrapped around his neck at the time of the accident? A. Yes.

"(5) Q. Did the deceased have his cap pulled down over his ears at the time of the accident? A. No.

"(6) Q. Was the deceased driving his team at the time of the accident with his lines fastened around his body? A. Yes.

"(6a) Q. Was the deceased driving his team at the time of the accident with his lines wrapped around his hands? A. Yes.

"(7) Q. For what distance to the southeast of the crossing in question is the railway track straight? A. Three thousand four hundred and sixty feet.

"(8) Q. From a point on top of the hill 245 feet from the north rail, measured by the wagon road, how far to the southeast could the deceased have seen the headlight of the train before it entered the cut near the crossing? A. About one-half mile.

"(9) Q. How far to the southeast of the crossing would the headlight of a train disappear into the cut to a person standing in the highway on top of the hill 245 feet from the north rail, measured by way of the wagon road? A. Five hundred and twenty feet.

"(10) Q. How far to the southeast of the crossing can a train be seen by a person sitting in a wagon-seat upon the double sideboards of the wagon in the wagon road, when he is seventeen feet from the north rail of the track at the crossing? A. About 500 feet.

"(11) Q. Can a flag twelve feet above the ties at a point on the railway 300 feet southeast of the crossing be seen by a person sitting in the seat on the double sideboards of a wagon in the highway when he is twenty-one feet north of the north rail of the crossing? A. Yes.

"(12) Q. How far was it from the top of the rail to the center of the headlight glass on the engine which struck the deceased? A. Thirteen feet."

No whistle was sounded before the train reached the crossing where the deceased was struck. The railroad track runs so close to the hill at the crossing that the deceased could not see down the track toward the southeast until the heads of his horses were within three feet of the track on the crossing.

*M. A. Low,* and *Paul E. Walker,* for plaintiff in error.

*I. M. Mahin, F. W. Mahin,* and *E. S. Rice,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: Several assignments of error have been presented, but they are all based upon the idea that the evidence and findings of the jury conclusively show contributory negligence on the part of the deceased. It is urged that if Hansen, when at the crest of the hill, had looked toward the southeast, which he could easily have done, the headlight of the train would have been seen by him, and being thus warned he would not have attempted to cross the track, in which case no accident would have occurred. It is assumed in this conclusion that the conduct of the deceased in driving down the hill as he did shows that he failed to look for an approaching train before starting down the road through the cut, and this failure constitutes the alleged contributory negligence. Without considering whether the deductions of fact made by the plaintiff in error are sustained by the evidence or not, we are unable to concur in its conclusion that the deceased was guilty of contributory negligence by failing to look and listen when at the crest of the hill. The rule of "look and listen" as applied generally and in this state requires people who are about to cross a railroad track at a public crossing to exercise such care and vigilance to avoid injury as a person of ordinary caution and prudence would use under the same circumstances. (7 A. & E. Encycl. of L. 428; *Brown v. Tex. & Pac. R'y Co.,* 42 La. Ann. 350, 7 South. 682, 21 Am. St. Rep. 374; *L. L. & G. Rld. Co. v. Rice,* 10 Kan. 426; *W. & W. Rld. Co. v. Davis,* 37 Kan. 743, 16 Pac. 78, 1 Am. St. Rep. 275; *C. R. I. & P. Rly. Co. v. Hinds,* 56 Kan. 758, 44 Pac. 993; *A. T. & S. F. Rld. Co. v. Shaw,* 56 Kan. 519, 43 Pac. 1129; *Railway Co. v. Dawson,* 64 Kan. 99, 67

Pac. 521.) In the last-named case an instruction given by the district court and sustained reads:

"It was the duty of the plaintiff in crossing the said track to use and exercise ordinary care to avoid injury; and if she failed to exercise ordinary care, or in other words if she was guilty of ordinary negligence which contributed directly or proximately to the alleged injury, then the defendant is not liable for the alleged injuries, even if they were received by her. By ordinary care is meant that degree of care which men in general exercise in respect to their own concerns; and by ordinary negligence is meant the omission or want of that degree of care which men in general exercise in respect to their own concerns. The burden of proof is upon the defendant to show by a preponderance of the evidence that the plaintiff was guilty of contributory negligence. With that exception, the burden of proof is upon the plaintiff to prove her case by a preponderance of the evidence." (Page 104.)

What constitutes ordinary care depends upon the special circumstances and conditions of each case. The conditions existing at different crossings, and the varying situations of persons about to cross, present phases of danger which differ so widely from each other that it seems impracticable, if not impossible, to fix a standard of duty in this respect which could be of general application. Therefore courts have, as a rule, limited their decisions upon this subject to the determination of what constituted ordinary care under the facts presented in the case being considered.

It has been generally held that ordinary prudence requires every person about to cross a railroad track to look and listen for approaching trains before going upon the crossing. If the track is clear and the view unobstructed, the performance of this duty will be prompted by a natural apprehension of danger. If obstructions intervene, so as to prevent a clear view of the track, it may become the duty of the traveler to stop, stand up in his vehicle, and look and listen, or, in rare cases, get out and examine the track in advance of

his team. In all cases the precaution to look and listen should be taken when the distance from the crossing will not make it unavailing. (*U. P. Rly. Co. v. Adams,* 33 Kan. 427, 6 Pac. 529; *Clark v. Mo. Pac. Rly. Co.,* 35 Kan. 350, 11 Pac. 134; *Railroad Co. v. Brock,* 64 Kan. 90, 67 Pac. 538; *Railway Co. v. Jenkins,* 74 Kan. 487, 87 Pac. 702; *The Cincinnati, Indianapolis, St. Louis and Chicago R'y Co. v. Howard,* 124 Ind. 280, 24 N. E. 892, 8 L. R. A. 593, 19 Am. St. Rep. 96; 7 A. & E. Encycl. of L. 429.)

Applying this rule to the facts here shown, we are unable to find the deceased guilty of contributory negligence. It does not appear that he had ever passed over that road before, or knew the condition of the railroad track, its proximity to the hill or any of the facts which made the crossing especially dangerous. No reasonable application of the rule of ordinary care will require a person to take precautions against a danger of which he is ignorant. When the deceased reached the point on the top of the hill 245 feet from the railroad crossing he was not aware that he could not thereafter see down the railroad track to the southeast until he was too close to the crossing to protect himself from a train coming from that direction. The darkness prevented him from seeing the condition of the ground between that point and the track. In the absence of knowledge to the contrary he might assume that in crossing the railroad here he could see approaching trains when far enough away to enable him to protect himself from danger, the same as at the ordinary crossing. In the absence of some knowledge on his part of the dangers here to be avoided we can not say that the deceased was guilty of contributory negligence.

The judgment of the district court is affirmed.