THE MISSOURI PACIFIC RAILWAY COMPANY v. WILLIAM
B. STEVENS.

1. RAILROAD WHISTLE—*Sounding before Crossing Highway.* It is the
duty of a railroad company, in running its trains over its track, to have
the whistle of its engines sounded three times, at least eighty rods
from the place where the railroad crosses any public highway, ex-
cept in cities and villages. Where no whistle is sounded, or other
alarm given, and damages are sustained by a train of cars running
over cattle upon the highway, the company is chargeable with negli-
gence, and it is not relieved from its liability therefor, merely by the
evidence of the owner of the cattle, in charge of the same, that he
saw the smoke and heard the puffing of the engine drawing the train,
more than half a mile from the crossing; because no one is bound
to conclude that the engine or train will cross the highway without
sounding the whistle three times, at least eighty rods from the cross-
ing.

2. ———— *Regular and Extra Trains; Competent Witness.* Where a
person has lived several months on a farm, near a railroad crossing
of a public highway, and his business requires him to cross the track
frequently, and he is able to tell the time the regular trains pass the
crossing, he is competent to testify whether a particular train is an
irregular or extra one.

*Error from Atchison District Court.*

ACTION by *Stevens* against *The Missouri Pacific Railway
Company,* to recover forty-five dollars, the value of a cow
alleged to have been killed on September 18, 1883, by the
negligence of the company, upon a public highway about
three miles southwest of the city of Atchison. Trial had
March 14, 1885, before the court with a jury. Verdict for
the plaintiff for forty-five dollars. The jury also made the
following special findings of fact:

"1. Was said cow killed at a public crossing? A. Yes.

"2. Was the whistle blown three times, eighty rods east of
said crossing as said train moved west? A. No.

"3. As soon as the engineer on said train discovered cattle
near said crossing, did he at once reverse his engine and use
all the power at his command to stop said train? A. No.

"4. Did the plaintiff know that said crossing was a dangerous
one? A. Yes.

"5. Did plaintiff use ordinary care to prevent his cattle from being run over at the time said cow was killed? A. Yes.

"6. Was said cow killed on September 18, 1883? A. Yes, or near this date.

"7. Did plaintiff have charge of said cow with others at the time of the killing of said cow? A. Yes.

"8. Was the plaintiff driving said cow with others towards said track on the public highway for the purpose of crossing? A. Yes.

"9. Before getting so near to said track that said cow could be controlled, did plaintiff or his employés look up and down the track to see if train was coming? A. Yes.

"10. Before any of said cattle crossed said track, did plaintiff and his employés hear an engine puffing east of there? A. Yes.

"11. Did plaintiff or his employés, after hearing the noise of an approaching engine, drive a portion of said cattle across and over said track? A. No.

"12. Could the plaintiff by the exercise of ordinary care have prevented the collision which resulted in the death of said cow? A. No."

Thereupon *The Railway Company* filed a motion for a new trial, which motion was overruled. Judgment was entered in favor of plaintiff and against the defendant, in accordance with the verdict, and for costs. *The Railway Company* excepted, and brings the case here.

*Everest & Waggener*, for plaintiff in error.

*J. C. Greenawalt*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by William B. Stevens against the Missouri Pacific Railway Company, to recover forty-five dollars as damages for the killing of a cow on September 18, 1883, upon a public highway, about three miles southwest of the city of Atchison. There was evidence before the jury tending to show that the whistle attached to the engine of the train doing the injury was not sounded at least eighty rods from the place where the railway crosses the highway. There was also evidence before the jury tending to show

that one of the persons in charge of the drove of cattle, when about to cross the highway, as the train was approaching, was on the track on horseback, waving his hat; that no attention was paid to this, and no attempt made to slacken the speed of the train, or to prevent it from running into the drove. Therefore there was sufficient evidence before the jury to sustain the verdict. (Comp. Laws of 1879, ch. 23, § 60; *Railroad Co. v. Rice,* 10 Kas. 426; *Railroad Co. v. Phillippi,* 20 id. 12; *Railroad Co. v. Wilson,* 28 id. 637.)

Counsel for the company assert that the killing of the cow was not caused by the omission to sound the whistle of the engine. In support of this, it is said that the plaintiff testified he heard the engine about half a mile away; that he could see the smoke at that distance, and therefore it is argued that he had ample notice of the train approaching the crossing. The evidence on the part of the plaintiff was to the effect that the train was about sixty or seventy rods from the crossing when he and his employé in charge of the drove of cattle— about forty in number—first saw it; that it was then running at the rate of fifteen miles an hour; that at the time, the drove were near to or upon the track; that the whistle was not sounded until the engine was close to the cattle; that a part of the cattle crossed the track, and the employé on horseback waved his hat from the track as a signal to the train to stop, and at the same time tried to keep the remainder of the drove, which had not crossed over, off the track. As soon as the parties in charge of the cattle saw the train coming, they did all they could do, according to their evidence, to save the cattle from being run over.

Although it is shown by the plaintiff's testimony that he heard the engine of a train puffing, more than half a mile from the crossing, and also saw the smoke of a train, he was not bound to conclude therefrom that the train would cross the highway, unless the whistle sounded three times, at least eighty rods from the crossing; but it is not conclusive from the evidence that the plaintiff thought the smoke he saw, and the puffing of the train he heard, was upon defendant's road

which crossed the highway where the cow was killed. In answer to one question, he said that it "might have been on the Omaha extension of the Missouri Pacific." This road did not cross the highway, but the Santa Fé and the Central Branch of defendant's road did.

At the time of the killing of the cow the regular passenger train crossed the highway each day at about three o'clock P. M., and the next regular train passed at five P. M. It was usual for Stevens to drive his cattle from his pasture over the crossing to his barn to feed, soon after the three o'clock train passed. He was driving his cattle from his pasture at the usual time on the day that his cow was run over. The train that ran into the drove seems to have been an extra or an irregular one, and therefore Stevens could not have anticipated that the train he heard a half-mile distant would pass the crossing, unless the whistle was sounded eighty rods therefrom.

We perceive no error in permitting the witness Bardshar to testify that the train doing the injury was an extra or an irregular one. He had worked for Stevens for several months before the killing of the cow, and had lived all this time at his house, which was very near the track. He had crossed the track where the cow was killed, about twice a day from the first of July previous, and was able to tell the time the regular trains crossed the crossing; therefore he had sufficient knowledge of the running of the trains to testify.

The court directed the jury—

"That it was the duty of the plaintiff to keep a lookout for trains, and not to drive his cattle upon or across the track at a time of apparent danger; and it was the duty of the servants of the defendant to keep a lookout for obstructions at crossings, and if cattle were seen on the track in time to prevent injuring them, to exercise ordinary care in endeavoring to do so, but if the animal killed got upon the track so suddenly, and so near to the approaching train, as to make it impracticable to prevent the injury, then there could be no recovery for the loss of the animal, unless upon the ground of a failure to sound the whistle, causing the plaintiff and his servant to act differently in the management of his cattle from what he would have done if it had been sounded."

40 — 35 KAS.

With the direction given, there was no material error in refusing the instruction of the company as to the duty of the plaintiff taking proper precautions in crossing the track with his cattle.

The judgment of the district court will be affirmed.

All the Justices concurring.