## Schmidt v. The Burlington, Cedar Rapids & Northern Railway Company

1. **Railroads:** CROSSING TRACKS ON STREET: COLLISION: CONTRIBUTORY NEGLIGENCE: EVIDENCE.  Plaintiff's husband was driving from the north to the south on a city street which was crossed by ten railroad tracks, and when upon the tenth or south one he was struck by a passing train and killed.  It appears that he was not chargeable with any negligence until he had passed the seventh track.  After passing this, he might have seen the train approaching, and possibly he did, but he drove ahead.  There were engines moving upon some of the other tracks, at greater or less distances from the crossing.  The train which struck him was moving nearly twice as fast as was lawful under the ordinances of the city, of which ordinance he may be presumed to have had knowledge; and the evidence made it probable that if it had been run at lawful speed he would have succeeded in crossing before its arrival, and that the collision would have been avoided.  In consideration of the facts that he was in a place of danger when he was on the seventh track, and that he had to choose between going forward and turning back at that point, and that he may well have relied upon the train's being run at lawful speed, and therefore reasonably concluded that he could make the crossing in safety, *held* that he could not be said, as matter of law, to have been guilty of contributory negligence, but that the question was properly submitted to the jury.

2. ———: ———: DUTY TO KEEP FLAGMAN: PLEADING: INSTRUCTIONS.  In such case the petition stated that " the defendant, without giving any proper warning or signal of the approach of its train, and without keeping any flagman at said crossing to give warning, * * * as it was required by an ordinance duly passed," etc.  *Held* that this plea was broad enough to sustain an instruction submitting to the jury the question whether under the circumstances ordinary care and prudence did not require the defendant to keep a flagman at the crossing, irrespective of any municipal regulations.

*Appeal from Clinton District Court.*—HON. C. M. WATERMAN, Judge.

FILED, OCTOBER 23, 1888.

THE plaintiff's husband was killed by a train on the defendant's road at the crossing of Fourth street in the city of Clinton, and she, as administratrx.of his estate, seeks to recover the damages sustained. Trial by jury, verdict and judgment for the plaintiff, and defendant appeals.

*E. S. Bailey* and *S. K. Tracy*, for appellant.

*Geo. B. Young* and *A. Howat*, for appellee.

SEEVERS, C. J.—The deceased, in the forenoon of the sixteenth day of June, 1887, was traveling in his wagon, drawn by two horses driven by himself, on Fourth street, in the city of Clinton. He was going from the north to the south, and Fourth street is crossed by ten railroad tracks. The first eight, numbering from the north, belong to the Chicago & Northwestern Railway Company; the remaining two to the defendant. The evidence, without conflict, shows that the deceased did not stop his team after he passed onto the first track, and that he was struck and killed by a train of cars which was being backed on defendant's track number ten. The deceased was familiar with the crossing, and he had driven his team over it quite frequently. The petition states that there was an ordinance of the city requiring the defendant to keep a flagman at the crossing; but this issue was withdrawn from the jury. It is also alleged in the petition that there was an ordinance which prescribed that trains should not be operated within the city limits at a greater speed than six miles an hour. There was evidence tending to show that the train in question, at the time, and just prior to the accident, was moving at the speed of from ten to twelve miles an hour. There were cars standing on several of the tracks, and a whole train was standing on track number seven; the last car of which, as the evidence tended to show, projected into the street. Engines were being moved on some of the tracks, at

some distance, however, from the crossing. There was evidence tending to show that one or two cars were standing on track number eight, west of Fourth street, and distant therefrom from twenty to sixty feet. The several railway tracks do not cross the street at right angles, but from a southwesterly to a northeasterly direction, and the train in question was moving from the southwest towards the crossing. Special interrogatories were submitted to the jury, which, and the answers thereto, are as follows: "(3) If he had so stopped or listened, could he have seen this train before going upon track number ten? Answer. Yes. (4) Was the team the deceased was driving easy to control? A. Yes. (5) If the deceased had stopped his team at track number seven, about how far could he have seen this train approaching? A. He could not see it. (6) If he had stopped his team from track number eight, how far away could he have seen this train approaching? A. About three hundred feet. (7) If he had stopped his team just before reaching track number nine, could he have looked up track number ten and plainly seen this train approaching? A. Yes. (8) Was he walking or trotting his team across these tracks? A. Walking. (9) After the deceased had driven over track number eight, what was there to have prevented his seeing the approach of this train, if he had looked? A. Nothing."

I. The negligence of the defendant is conceded, but it is contended by counsel for appellant that it clearly appears from the special findings and the uncontroverted evidence that the deceased was guilty of such contributory negligence as will prevent a recovery. It is insisted that it was the duty of the deceased to stop his team and look or listen before he reached track number ten, and that, if he had done so, the accident would not have occurred; and therefore it follows that he was guilty of contributory negligence, which was the proximate cause of his death. But a traveler on a highway, when approaching a railroad crossing, is not

1. RAILROADS: crossing track on street: collision: contributory negligence; evidence.

under all circumstances bound to stop his team and look or listen for an approaching train; that is to say, his duty in this respect is not absolute. *Funston v. Chicago, R. I. & P. Ry. Co.*, 61 Iowa, 452. That such is the ordinary rule will be conceded, but there was no more reason why the deceased should have stopped his team when he reached track number eight, than when he was about to cross either of the other tracks, and it cannot be claimed, we think, that he was bound to stop his team before he reached each of the other tracks; but clearly he was bound to exercise ordinary diligence before attempting to cross either of the tracks. In fact, he was required to use ordinary diligence all the time commensurate with the risk. From the number of tracks and the number of trains moving, and cars standing thereon, and his acquaintance with the crossing, the deceased, it will be conceded, was required to exercise an unusual degree of diligence. While this is so, the well-established rule is that the question whether a person who has occasion to cross a railway track has been guilty of contributory negligence is ordinarily a question for the jury, and it becomes a question of law only when there is no serious dispute as to the facts or the conclusions that can be drawn therefrom; and ordinarily, subject to this general rule, each case must be determined upon the particular facts appearing in evidence, for no two cases are precisely alike, although the shades of difference cannot always be accurately defined. *Whitsett v. Chicago, R. I. & P. Ry. Co.*, 67 Iowa, 150. If the deceased could see or hear the movement of trains as well without stopping his team as he could if he did so, then ordinary or usual diligence did not require that he should do the latter; or, if he did see the train, there was no reason why he should stop his team to ascertain what he already knew. The material question is whether the deceased was negligent after he passed track number seven. The jury were warranted in finding that there was a car standing on track number eight, which, to some extent, prevented the deceased from

seeing the train, and the jury found that he could not see it when he was at or on number seven, but he could have seen it from track number eight; that is to say, when he was on that track he could see the train. As he was seated in his wagon, and as the width of the tracks from the outside of one rail to the other was six feet and eight inches, the heads of the horses must have been in the space between tracks numbers eight and nine. The street is eighty feet wide, but following the railroad tracks it is one hundred and seven feet wide, for the reason that the tracks do not cross it at right angles. The distance from the south rail of track eight to the north of track ten is between three and four feet, following the line of the street. The crossing was planked all the way, and therefore there was no difficulty, nor was there anything to cause any delay in passing on it. There is some evidence tending to show that the deceased saw the train either before or just after he crossed track number eight; but such evidence is in the nature of conclusions from what the deceased did. There is evidence tending to show that, after crossing track eight, he stopped the horses with the lines, and turned them in an easterly direction, so as to cross track ten further from the approaching train than if he had not done so. As there was no obstruction to prevent the deceased from seeing the train after he crossed track eight, and it was daylight, we think the jury were warranted in finding that he did see it once, when he turned east, but he believed he could safely cross in front of it; and the jury were further warranted in finding that, at the speed he was going, and the distance he had to go, and the train to move, the accident would not have occurred if the train had been moving at six miles an hour. Upon the supposition, then, that the deceased saw the train, and made the attempt to cross in front of it, was he, as a matter of law, guilty of contributory negligence? When he saw the train, it cannot be assumed that he knew, or had reason to believe, that it was moving at a greater rate of speed than six miles an hour. But we think he had a right to assume that it was not running any faster

than provided by the ordinance of the city, of which it should be presumed he had knowledge, as he was a resident thereof, and had been such resident for several years, as the jury could from the evidence well find. It must be remembered that the deceased, when it is said he should have stopped, was on a railroad track, which, ordinarily, at a place like the one in question, where trains were frequently moving, cannot be regarded as a place of safety. The deceased was compelled to either stop or go on. There was at least some peril in whichever course he took. He chose the latter, and the instinct of self-preservation requires us, or, rather, the jury, to presume that he thought it was better to go on than to remain still. The deceased did not do so in a hurried manner, but moved as if he thought the train was sufficiently distant to permit him to cross in front of it; and we think the jury could well find, under the evidence, that the accident would not have occurred if the train had not been running at a speed nearly or quite double that at which it could lawfully move. Under these circumstances, we do not think, as a matter of law, that it can be said the deceased was guilty of such contributory negligence as will prevent a recovery, for the reason that it was for the jury to say whether, under the circumstances, the deceased was negligent; and therefore the court did not err in refusing to direct the jury to find for the defendant, and in overruling the motion for a new trial.

II. In the fifth paragraph of the charge, the court withdrew from the jury the question as to the defendant's negligence for the reason that it had no

2. ——: ——: duty to keep flagman: pleading: instructions: flagmen at the crossing, because no such ordinance had been introduced in evidence; but the court submitted to the jury the question whether, under the circumstances, ordinary care and prudence did not require the defendant to keep a flagman at the crossing to warn persons passing over it, irrespective of any municipal regulations. This is said to have been erroneous, upon the sole ground that there was no such issue or allegation in the petition upon

which the charge of the court could be properly based. It is stated in the petition that " the defendant, without giving any proper warning or signal of the approach of its train, and without keeping a flagman at said crossing to give warning and notice to persons passing upon said street, and to signal danger when trains were approaching or crossing said street, as it was required by an ordinance duly passed," etc. We think the court did not err in instructing the jury as it did, for the reason urged by counsel. The petition is broad enough to base thereon the question submitted to the jury. It is said that the court erred in refusing three instructions asked by the defendant. What we have said, we think, in connection with the instructions given, sufficiently indicates that the court did not err in refusing the instructions asked. AFFIRMED.