SUBURBAN MARKET CO., Limited, v. BOARD OF ASSESSORS et al.*

(Feb. 2, 1903.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by the Suburban Market Company, Limited, against the board of assessors and others. Judgment for plaintiff, and defendants appeal. Reversed.

Edward K. Skinner, for appellant board of assessors. Francis Charles Zacharie, for appellant tax collectors. Henry Garland Dupré, Asst. City Atty., for appellant city of New Orleans. Hugh S. Suthon, Frank Zengel, and Clegg & Quintero, for appellee.

BLANCHARD, J. For reasons assigned in the opinion of the Court this day handed down in the case of C. N. Maestri v. Board of Assessors et al. (No. 14,259 on the docket

---

[1]Ante, p. 517.
*Rehearing denied May 14, 1903.

of the Court) 34 South. 658,[1] it is ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and that the demand of the plaintiff corporation be rejected at its costs in both courts.

BREAUX, J., dissents in this case for the reasons assigned by him in the case of C. N. Maestri v. Board of Assessors et al. (No. 14,259 on the docket of this court) 34 South. 663.

---

(34 South. 667.)

No. 14,128.

SCHWARTZ v. NEW ORLEANS & C. R. CO.

(Nov. 17, 1902.)

STREET RAILROADS—INJURY TO PEDESTRIAN —PROXIMATE CAUSE—NEGLIGENCE.

1. Action sounding in damages for personal injuries incurred. Facts and circumstances make out a case of contributory negligence barring plaintiff's recovery.

On Rehearing.

2. Finding himself between two street cars upon a crossing, plaintiff held his ground. A curve in the car tracks began where he stood. On entering this curve, the car in front of him developed a lateral motion, and squeezed him against the other car. Although he had lived in New Orleans all his life, and presumably was as familiar as anybody with this crossing, he did not know of this lateral movement, and did not guard against it, which he could easily have done, and had ample opportunity to do, as the cars at one moment were stationary, the one taking on passengers and the other letting a wagon go by. Under these circumstances, *held*, that this unexpected lateral movement of the car and the act of plaintiff in remaining between the cars were the proximate causes of the accident.

3. The car behind plaintiff would have passed on, and would not have been there to act as a wall for plaintiff to be pressed against, if it had not made an emergency stop to avoid striking plaintiff, who had negligently passed too close ahead of it. *Held*, this negligence of plaintiff in passing too close ahead of this car was not a proximate cause of the accident, it being disconnected judicially from the accident by the deliberate act of the plaintiff himself in choosing to remain between the cars and the deliberate act of the car company in so running its cars upon the crossing as to create a danger by which pedestrians upon the crossing might be overtaken unawares.

4. The act of the car company in creating upon one of the most frequented crossings of the city of New Orleans an insidious danger,

---

[1]Ante, p. 517.

when it could have avoided doing so by not permitting the cars to pass each other upon the crossing, is *held* to constitute actionable negligence.

Blanchard, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Joseph Schwartz against the New Orleans & Carrollton Railroad Company. Judgment for defendant, and plaintiff appeals. Reversed.

McCloskey & Benedict, for appellant. Dart & Kernan, for appellee.

BLANCHARD, J. The plaintiff appeals from a judgment rejecting his demand for damages for personal injuries sustained in consequence of becoming pinioned or squeezed between two of the cars of defendant company at the intersection of Baronne and Canal Streets in the City of New Orleans.

Negligence is charged against defendant for having so constructed its tracks that there is not sufficient space or room at that point between passing cars, when swinging in or out of the curves in the tracks, for a man to stand in safety, or to extricate himself if caught between the cars.

It is averred that this was known to the company, but not within the knowledge of the plaintiff; that in standing in the space between the tracks to allow one car to pass another he had the legal right to presume the company had provided sufficient room to ensure his safety—the place being a public crossing; and that since the accident was one reasonably to be anticipated by the defendant, its failure to provide against the same constitutes gross negligence.

A supplemental petition charges the motorneer operating one of the cars with negligence as well as want of skill; that he should not have attempted to run his car past where plaintiff was, seeing, as he must have seen, the situation in which plaintiff was placed; that he (the motorman) knew, or should have known, that the body of the car engaging the curve at that point would swing towards the left, where plaintiff was standing with his back against the other car and unable to recede.

The answer is a general denial, with the plea that if the plaintiff was injured as claimed by him it was through his own fault and want of care.

The drawing herewith presented accurately depicts the location of the street railway tracks at the point of intersection between Canal and Baronne streets, and, also, with sufficient accuracy the location of the cars at the time of the accident.

Looking at the drawing or plat from the southward, the car on the left had just turned into Baronne street from Canal and was either stationary at the time of the accident or was moving up Baronne (which is towards the south) very slowly.

The car on the right had just come down Baronne and had turned into the curve on its way to the neutral ground on Canal street, thence towards the river. It, too, was running very slowly.

It will be observed the car coming into Baronne had emerged from the curve and was on the straight track, while that going into Canal had passed out of the straight track on which it had been running and had entered the curve.

The tracks on Baronne street are parallel and four feet apart, but as they pass out of the foot of Baronne street into Canal street the curvature of the track on the right is sharper and shorter, so that it falls

away from the other track, and the two do not again become parallel until the neutral ground of Canal street is reached, where one of the tracks extends along one side of it and the other along the other side of it. The parallel there is a wide one.

The track on the right begins its curve in Baronne street just before passing out into Canal street, while the one on the left passes into Canal street before beginning to curve.

The result of this is that whereas the tracks are four feet apart where the curvature of the one on the right begins, the space rapidly widens as it (the track on the right) turns away to the near side of the neutral ground on Canal street, leaving the track on the left to describe a more gradual curvature to the far side of the neutral ground.

The track on the right is the one that cars coming down Baronne street and which go along Canal street towards the river use, while the one on the left is used by cars coming back from the river along Canal street and thence up Baronne street.

In the forenoon of the day of the accident the plaintiff was walking along the banquette of Canal street going in the direction of the river. Reaching Baronne street at its intersection with Canal, he observed three cars coming along the curve of the track nearest to him on their way up Baronne street. They were near together and he waited for two of them to pass, and then, stepped across the track immediately in front of the third car. He was walking fast; the car moving slowly. The motorneer of the car, seeing the man in such dangerous proximity to the front of his car and it moving, applied his brakes and brought his car to a sudden stop, at the same time exclaiming to the man:—"Look out; do you want to be killed."

Just at that moment a car was coming down on the other track (which is the track on the right in the plat). Plaintiff contends this car had not yet reached the point on its track opposite where he stood, but was some eight or ten feet up the track to his right, and that there was nothing to prevent the motorneer of the car from seeing him had he been looking ahead of his car.

Defendant contends that as plaintiff crossed the first track ahead of the car whose motorneer called to him to look out, the car on the second track was opposite him, its forward dash board having already passed the point where plaintiff emerged into the neutral ground between the tracks, and that in consequence the motorneer of that car did not see him at all until after the accident.

The preponderance of testimony seems to sustain defendant's version.

Having passed the first track and encountering the car on the second track, plaintiff stood still on the neutral ground. He was at the usual crossing, at a point on a prolongation of the center line of the banquette. Had the tracks been parallel there, he would have been in no danger. He might have found himself in "close quarters," but still the cars would have passed each other without harming him.

But the curvature of the track to the right (the one he was then seeking to cross) had already begun, and the car upon it, entering the curve, swung, as is usual, on its trucks, the rear end thereof extending over into the space between the tracks.

At that moment the plaintiff stood with his back to the car on the other track, and, so standing, was caught between the cars. With the rear end of the passing car thus extending over by reason of the car being on the curve of the track, there was not left space enough for plaintiff's body between the cars, and he was squeezed or mashed, and quite seriously injured.

*Ruling* —Plaintiff's conduct was not that of a prudent, cautious man. He was young, active, strong—given to athletics. He did not doubt his ability to successfully pass in front of the car going up Baronne street, and he did so, though in the act he caused a premature and sudden stoppage of the car. It was due to stop above the crossing, some twenty feet, perhaps, beyond where plaintiff forced it to stop, which is immediately at and on the crossing.

The proper thing for him to have done was to let the car pass before attempting to cross. So close was he to the car in passing in front of it that the motorneer, by leaning over, could have taken his hat from his head. Such is the testimony.

Conceding, as contended for by plaintiff, that he had the right to be on the particular spot, viz:—upon the neutral ground between

the tracks at the street crossing for pedestrians, it was imprudence to occupy the position just at the moment he did considering the environment then existing.

He got himself imprudently into the situation in the sense that he alone was responsible for it. Having put himself there, it was incumbent upon him to extricate himself from it so as to avoid injury if there was a way reasonably and practically open to him to do so.

That there was a way, seems clear. The outgoing car, turning on the curve, was, as seen, moving slowly. It was going no faster than a man could walk at a moderate gait.

All the plaintiff had to do to escape being pinioned between the cars was, as he realized or should have realized the danger, to walk down the side of the stationary car, in front of which he had just passed, towards Canal street. This would have, within a few feet, brought him to a space between the cars wide enough to ensure absolute safety, for, as seen on the plat, the track on the right, in engaging the curve as it debouches into Canal street, rapidly falls away from the track on the left.

A man who was agile enough to sprint it across the first track so close to the car moving upon it that the motorneer could touch him, was agile enough to sprint it down the side of the car to escape the swinging end of the car on the other track.

We pass no opinion upon the question raised by plaintiff that it was negligence in the car company to operate cars so large upon its tracks that at curves there is not sufficient clearance space to enable a man to stand in safety between the tracks. It is not necessary to pass upon it. Even conceding the contention of the plaintiff in this regard the case is against him because of his own contributory negligence; his failure to use the means of escape at hand to avoid injury.

With regard to the contention that the car tracks are placed too near together, a sufficient answer is they are placed where the City of New Orleans, in granting or selling the franchise, required them to be placed.

We do not find it is established by the testimony that the motorneer of either car was guilty of any negligence. But even if one or the other was, or both were, plaintiff is debarred from recovery by the facts and circumstances above detailed constituting negligence on his own part, which is held to have been the proximate cause of the injury he suffered.

The judgment appealed from is found correct and the same is affirmed.

PROVOSTY, J., dissents.

### On Rehearing.

#### (June 8, 1903.)

PROVOSTY, J. On being released from jury duty at the criminal district court, the plaintiff walked to Canal street, and then along the upper sidewalk of Canal street in the direction of the river. It was at 11 o'clock of a sunshiny day in March. On reaching Baronne street, he found the crossing congested with street cars, vehicles, and pedestrians. He waited for two cars to go by that were passing from Canal street at his left into Baronne towards his right, or uptown, and then ventured to cross in front of the third car, ahead of which there was a clearance. Being a young man in the full possession of all his faculties—in fact, an athlete—and confident of his ability to keep out of reach of the car, which was moving at what the motorman describes as "a slow walk," he did not dart across the track, but walked across. His movement, although rapid, must have had about it an appearance of unusual deliberation, for the motorman, though accustomed, as he himself says, to seeing a great many men cross his car in the same way, put on his brake for an emergency stop, and hallooed to him, as he was stepping off the track, "Look out! Do you want to get killed?" Baronne is a double-track street. On the second track—that in front of Schwartz after he had crossed the first—a car going in the direction of Canal street, or downtown, had at that moment either already intercepted the path of Schwartz, or was in the act of doing so. Schwartz says the latter, and the motorman of the car and another witness (Stockley) say the former. Be that as it may, Schwartz's progress across the street was intercepted, and he found himself on the neutral ground between the two cars, the front part of uptown car, ahead of which he had passed, having gone on be-

yond him before coming to a final stop; and the other, or downtown, car having come in front of him. Canal and Baronne streets being at right angles, the tracks in passing from the one street into the other describe a curve, and as one of them goes to the far side of Canal, which is a very wide street, and the other to the near side, the curve of one is much wider, so that the two tracks fall away from each other, their divergence beginning at a point about three feet from the property line on the Canal street side. Had it not been for this divergence, Schwartz could not have stood between the cars, the space between them when on the parallel portion of the track being only 10 inches. At the place where he stood, supposing that he stood at a point in the center of the prolongation of the sidewalk, as he testifies he did, the space between the cars was 15 inches. Three feet further to his left the space increased to 21 inches, and so on, increasing by an accelerated ratio. Therefore, if he had suspected the danger he was in, he could have saved himself by sidling to the left towards Canal in the direction of the widening of the space between the cars. Being asked why he stood deliberately in this position between the two cars, he answered he thought he had room. Being asked whether he had ever done this before, he answered he had done so on the neutral ground on Canal street. While he thus stood, the car back of him had come to a final stop, and was stationary. The car in front of him had entered the curve, and was moving towards Canal street. This car being very long, and the curve sharp, the rear end of the car swung outward from the track and squeezed him against the other car behind him, injuring him very severely, crushing his breast bone, and coming very near killing him. For this injury he brings the present suit in damages.

Defendant answers by a general denial and by a special plea that the plaintiff was injured through his own fault, gross want of care and negligence.

From the fact that the motorman put on his brake for an emergency stop, it is evident that Schwartz either passed too close to the car or was too deliberate in his movements, either of which was negligence on his part. His counsel concede that, if he had

been injured by this first car, he would have been cut off from recovery by his contributory negligence. The first question, therefore, must be whether this negligence was one of the juridical causes of the accident. If it was, further inquiry is unnecessary.

As already stated, he might have saved himself by moving towards the left, where the space was wider, and he did not do so because he thought he was safe where he stood. The immediate cause of his happening to be between the cars at the moment of their coming together, therefore, was not his having ventured to cross ahead of the car, but his having decided to hold his ground where he stood. He does not pretend to say that he was not entirely self-possessed, and could not have gotten out from between the cars if he had chosen to do so; on the contrary, he says expressly that he remained there because he did not think he was in danger. The fact is that the car made a stop in front of him to let a wagon go by, and the other car was taking on passengers, so that for a moment he stood between two stationary cars, with ample opportunity to get out if he had deemed it advisable to do so. But he considered himself safe if he kept straight and quiet, and he did so. Under these circumstances, his negligence in venturing to cross ahead of the car is completely disconnected juridically from the accident that followed. "A person is juridically the cause of an injury if his act, supposing that there is no intervention of disturbing independent moral agents, would be, according to the usual course of events, followed by such injury." Wharton on Negligence, § 323. "A proximate cause in the law of negligence is such a cause as operates to produce particular consequences without the intervention of any independent unforeseen cause without which the injuries would not have occurred." Am. & Eng. Ency. of L. (2d Ed.) vol. 21, p. 485. Between the act of plaintiff in venturing to cross ahead of the car and the injury there was the intervention of two independent, unforeseen causes of the injury, both of them the acts of independent moral agents, namely, the act of plaintiff himself in voluntarily continuing to occupy the space between the cars when he had a full opportunity to get out, and the act of the de-

fendant in operating its cars at this crossing in such a way as to render dangerous a position which pedestrians using the crossing might occupy thinking it to be safe. Both of these causes operated subsequently to plaintiff's act in crossing, and were unforeseen and unanticipated by plaintiff when he decided to venture to cross ahead of the car.

It is argued that, had Schwartz not caused the car to make this emergency stop to avoid running upon him, it would have passed on, and would not have been there to serve as a wall for the other car to crush him against. The argument is good in logic, but not in law. The law takes into account only the immediate or proximate cause, and treats all others as mere conditions. "Where the plaintiff's negligence is remote and defendant's proximate, or, in other words, where the plaintiff's negligence was a condition of the injury, but not its juridical cause, then plaintiff is not precluded from recovery." Wharton on Negligence, § 323. "In the consideration of negligence as a proximate cause of injuries, the distinction between conditions and causes should be borne in mind. * * * If the defendant's act or omission was not a cause of the injuries, but was only a condition upon which some new, independent, and unforeseen cause operated, the latter is the proximate cause of the injuries, and the defendant's negligence is too remote." Am. & Eng. Ency. of L. (2d Ed.) vol. 21, p. 494; Mire v. Railroad Co., 42 La. Ann. 385, 7 South. 473; Smith v. Railroad Co., 49 La. Ann. 1325, 22 South. 359. The presence of this car at the back of plaintiff was a condition upon which the voluntary act of the plaintiff in choosing to hold his ground and the voluntary act of the defendant in running its cars in a particular manner operated as independent causes.

The proximate cause of the injury was the lateral movement of the car, which plaintiff did not foresee, and did not guard against. This is the danger which proved to be a surprise to him, and from which, in point of fact, he suffered. The danger he had assumed by venturing to pass ahead of the car was over. He stood on the side of the car, and would have been safe if the car in front of him had not developed this unexpected lateral movement. This movement, then, was the element of surprise and danger in the situation, and is the juridical cause of the accident. Such being the case, it is this movement and the danger produced by it we have to deal with in assigning legal responsibility for the injury; and consequently the questions are, first, whether the creation of this danger by defendant was actionable negligence; and, secondly, whether plaintiff was bound to know of and guard against it in such way that his not doing so was contributory negligence.

Taking up the latter question, we have no hesitation in saying that plaintiff was not bound to anticipate this danger. He evidently did not, in point of fact, know of it, for, if he had, the evidence leaves no doubt he would have avoided it by sidling between the cars towards Canal street, where the space was ampler, or even by getting out altogether from between the cars; and his not knowing of it is as good proof as needed that the general public, and he as one of the general public, could not be expected to know of it, for if a young man like him, in the full possession of all his faculties, who had lived all his life in New Orleans, and was as familiar with the ins and outs of this crossing as anybody, did not know of this danger, why should any pedestrian using the crossing be expected to be better advised?

Plaintiff must be absolved, we think, of contributory negligence. As he stood upon this crossing at a place he had a perfect right to be, he took upon himself such dangers only as are incident to the usual and ordinary running of cars. He was not bound to anticipate dangers such as any one of the general public could not be supposed to know of and guard against. If there was such unusual, hidden danger, the duty rested upon defendant either not to create it, or to give the public due warning of it.

"If a railroad company, in the management of its traffic, causes unusual peril to travelers, it should meet such peril by corresponding precautions. So, where the crossing is especially dangerous to travelers on account of its locality or mode of construction, or because the track is curved, or the view obstructed, it is the duty of the company to exercise such care and take such precautions as the dangerous nature of the

crossing requires." Elliott on Roads & Streets (2d Ed.) § 791, p. 856.

Plaintiff had a right to assume that defendant would take proper precautions for the public safety. A traveler crossing a railroad track may assume that the train will not run at a speed prohibited by city ordinance (Hart v. Devereaux, 41 Ohio St. 565; Schmidt v. Railway Co., 75 Iowa, 606, 39 N. W. 916), and that the statutory warning will not be omitted (Missouri Pacific R. R. Co. v. Stevens, 35 Kan. 622, 12 Pac. 25), and need not anticipate a negligent act (O'Connor v. Missouri Pacific R. R. Co., 94 Mo. 150, 7 S. W. 106, 4 Am. St. Rep. 364). A pedestrian crossing the highway need not anticipate reckless riding. Stringer v. Frost, 116 Ind. 477, 19 N. E. 331, 2 L. R. A. 614, 9 Am. St. Rep. 875. Nor that a wagon will overtake and strike him, when there is ample room to pass on either side. Shea v. Reems, 36 La. Ann. 966. Customers of a railroad company loading and unloading cars, and servants of the company in the performance of their duty, are justified in supposing that trains will not be run carelessly or contrary to rules. Chicago R. R. Co. v. Goebel, 119 Ill. 516, 10 N. E. 369. In the exercise of his lawful rights, every person has the right to presume that every other will perform his duty and obey the law, and it is not negligence for him to assume that he is not exposed to a danger which can only come to him through a disregard of law on the part of some other person. Kellogg v. Chicago R. R. Co., 26 Wis. 223, 7 Am. Rep. 69; note to section 38 of Beach on Contributory Neg. (2d Ed.).

The question of defendant's legal responsibility for the injury has virtually been already answered. It stands to reason that to have produced upon this crossing—one of the most frequented in the city—a danger by which any one of the pedestrians upon the crossing might at any time be overtaken unawares was culpable negligence. Pedestrians and cars had equal right upon the crossing, and one could not use his right so as unnecessarily to create danger for the other. The maxim, "sic utere tuo ut alienum non lædas," applies to such a case. This danger might have been avoided without material impairment of the efficiency of the car service by simply not permitting the

cars to meet on the crossing, and it was incumbent upon defendant to do so. See, in this connection, Summers v. Railroad, 34 La. Ann. 145, 44 Am. Rep. 419. That there is danger to the public in permitting the cars to meet at this crossing, the present case and another case before this court but too sufficiently attest. Defendant should have known of this danger, and guarded against it. He who creates a danger upon or near a public highway must see to it that no harm results therefrom to the public. Wharton, Neg. § 839; Thompson, Neg. vol. 1, p. 346.

It makes no difference that the danger which defendant created by the manner of running its cars at this crossing threatened no one in particular, and might have continued long in existence without any one suffering from it. Suffice that it existed, and was susceptible of causing injury, and was the result of negligence. Wharton, Neg. § 109.

Remains the question of the quantum of damages. Plaintiff came very near losing his life. On being released from between the cars, he was staggering, and speechless. He was taken to a drug store near by, and attended to. His chest bone was broken, and his right arm injured. He was in bed for six or seven days, and had to remain bandaged three weeks and two days. On the day of the trial—nine months after the injury —he still could not expand his chest without pain, and in walking was bound "to carry his chest together all the time," and was unable to place his hands behind his head. Previous to the accident he had been prominent in athletics. His bill for drugs was $22; and for his physician $55. He was kept from his work 25 days. He claims $2,000 damages. The lower court, having rejected his demand altogether, did not pass on the quantum of the damages. We think that an allowance of $1,000 will do justice in the case.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the plaintiff have judgment against the defendant in the sum of $1,000, with legal interest from the date of this judgment, and that defendant pay the costs of this suit.

BLANCHARD, J., dissents.