THE KANSAS CITY-LEAVENWORTH RAILROAD COMPANY v. MARGARET GALLAGHER.

No. 13,423. (75 Pac. 469.)

SYLLABUS BY THE COURT.

1. STREET-RAILWAY—*Injury to Pedestrian—Inference of Jury.* In the absence of evidence to the contrary, a jury may infer from the universal instinct of self-preservation that a person about to cross an electric street-railway track both looked and listened before venturing to do so.

2. ———— *Duty of Pedestrian—Held to the Exercise of Reasonable Care—Question for Jury.* It is the duty of a pedestrian upon a city street, who is about to cross the track of an electric street-railway company, to exercise his faculties of sight and hearing, and in other respects to take ordinary precautions to avoid

collision with the cars.  If he does look and listen he will be held to an apprehension of that which should have been seen and heard, and if he fails to look and listen he will be charged with the same liability in case of disaster as if he had done so.  But a traveler may cross an electric street-railway track in front of an approaching car which he plainly sees and distinctly hears and not be negligent.  If, in view of his distance from the car, the rate of speed of its approach, and all other circumstances of the event, a reasonably prudent man would accept the hazard and undertake to cross, a traveler may do so, and the propriety of his conduct is ordinarily a question for the jury.

Error from Leavenworth district court; J. H. GILL-PATRICK, judge.   Opinion filed February 6, 1904. Affirmed.

*Atwood & Hooper*, for plaintiff in error.

*John T. O'Keefe*, and *Benjamin F. Endres*, for defendant in error.

The opinion of the court was delivered by

BURCH, J.:  A street-sweeper of a city street, while engaged in the performance of his duties at night, was run down and killed by an electric street-railway car. The car was running at a speed of twenty to twenty-five miles per hour, while the rate allowed by the ordinances of the city was but twelve miles per hour. The track was "sweaty," and because of its slippery condition a moving car was difficult to control.   The conductor and motorneer in charge of the car discovered the employee of the city when 100 feet distant from him.   He was then upon the track between its rails and in the act of walking across it.   The car conductor shouted to him, but the bell was not sounded or other warning given.   Two railway engines were standing a short distance beyond the place of accident, one of which was taking water and the other noisily emitting steam, while the wind blew

from the direction of the engines toward the pedestrian and the car. When the man was observed the motorneer set the brakes, which locked the car wheels, but not so quickly as if the brakes had been in good repair. The proper method of overcoming the momentum of the car would have been to apply sand to the track, but the apparatus for the use of sand was out of repair and that expedient was not adopted at all. The car was properly lighted, and some street lights were burning in the vicinity, and if it had been properly equipped, operated and controlled the car could have been stopped within a distance less than that intervening between the man and the car when he was discovered to be on the track.

The deceased was struck by the corner of the car on the side of the track toward which he was walking, and by force of the collision his body was thrown still farther away from the track. He was in good health and had good eyesight and good hearing. He was familiar with the track and the manner and mode of running cars upon it along the street in question, and knew about how often cars passed the place of injury. He had an unobstructed view of the track for 610 feet in the direction from which the car came. There was nothing to prevent his seeing the car as it approached him if he had looked, and if he had heard or heeded the shouting of the conductor he then had time to leave the track and avoid the collision, and had the ability to do so. But there is nothing to show either that he did or did not look for an approaching car, or that he did or did not see or hear the one which struck him. Under these circumstances, was the deceased guilty of such contributory negligence that his widow may not recover from the company

operating the car the damages occasioned by his death?

The defendant company argues the case as if the deceased man either looked and listened for an approaching car, or did not do so; that he was negligent if he failed to take so much precaution for his own welfare; that he must be held to have noted the proximity of the car, if he did look and listen, and that a reasonably prudent man, after looking and listening, would have avoided a collision.   It is true that a traveler upon a city street, who is about to cross the track of an electric street-railway company, should exercise his faculties of sight and hearing, and in other respects take ordinary precautions to avoid collision with the cars.   If he does look and listen he will be held to an apprehension of that which should have been seen and heard;   and if he fails to look and listen he will be charged with the same liability in case of disaster as if he had done so.   These principles meet the tests both of reason and of practical application to the affairs of men.   (*Burns v. Railway Co.*, 66 Kan. 188, 71 Pac. 244.)

But a jury may infer ordinary care and diligence on the part of an injured person from the love of life, the instinct of self-preservation, and the known disposition of men to avoid injury.   (*Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586, 24 Pac. 1101.)   And in the absence of evidence to the contrary, it will be presumed that a person about to cross a railroad track both looked and listened before venturing to do so.   (*C. R. I. & P. Rly. Co. v. Hinds*, 56 Kan. 758, 44 Pac. 993.)

"There was no error in instructing the jury that in the absence of evidence to the contrary, there was a presumption that the deceased stopped, looked and listened.   The law was so declared in *Texas & Pacific Railway Co. v. Gentry*, 163 U. S. 353, 366, 41 L. Ed.

186, 192, 16 Sup. Ct. Rep. 1104,   The case was a natural extension of prior cases.   The presumption is founded on a law of nature.   We know of no more universal instinct than that of self-preservation—none that so insistently urges to care against injury. It has its motives to exercise in the fear of pain, maiming, and death.   There are few presumptions, based on human feelings or experience, that have surer foundation than that expressed in the instruction objected to.''   (*Baltimore & Potomac R. R. v. Landrigan*, 191 U. S. 461, 473, 24 Sup. Ct. Rep. 137, 48 L. Ed. 262.)

Since the evidence in this case gave no account of the street-sweeper on the night of the fatality until he was suddenly seen in a place of peril, on the railway-track, with the enginery of death bearing swiftly down upon him, these presumptions should be indulged in his favor, and the case determined as if he had chosen his gait in crossing the track with reference to an observation of his surroundings.   Conceding, then, that the traveler looked for whatever was to be seen, and listened for whatever was to be heard, and duly apprehended the report of his senses, still he cannot be summarily condemned.   A man may cross an electric street-railway track in front of an approaching car which he plainly sees and distinctly hears and not be negligent.   Hundreds of people do so every day, and yet satisfy every demand for care and caution which the law imposes upon them.   The requirement of the law that a man shall look and listen means no more than that he shall observe and estimate with reasonable accuracy his distance from the car and the speed of its oncoming.   He is then to make a calculation and comparison of the time it will take the car to come and the time it will take to cross the track, and if, under the same circumstances, a reasonably prudent person would attempt to cross at

Railroad Co. v. Gallagher.

a given rate of speed he will not be negligent in doing so. It is true that a reasonably prudent man may be mistaken or be deceived, but if so, and if his conclu-ion from the facts as they appear to him be erroneous and an injury result, he is nevertheless guiltless of contributory negligence, for the law does not measure human conduct in such cases by any higher standard of care than that which such a man would exercise ; and whether or not a prudent man would accept the hazard is generally a question of fact for the jury.

"It is consistent with the facts proved that Lawler saw the approaching car and, without negligence on his part, failed to observe from his position the un-usual speed at which it was running, so that his conclusion that he could safely cross was not an un-reasonable one. Clearly it is not negligence in law for one to cross a street-railway track in front of an approaching car which he has seen and which does not appear to him to be dangerously near, and which would not have been so in fact had it been running at its ordinary rate of speed. Whether one who has ob-served an approaching street-car should have also ap-prehended that it was approaching at such a speed as to reach him before he could cross the track, is gen-erally a question of fact to be determined upon the circumstances of each particular case." (*Lawler, Adm'r, v. Hartford Street Ry. Co.*, 72 Conn. 74, 82, 43 Atl. 545.)

"He who puts himself in the way of runaway horses who have escaped from the driver's control must know that he is taking a risk. But a jury may well say that he who crosses in front of a trolley-car pro-vided with a motorman may assume that it is fur-nished with the means of stopping or reducing speed. Then there was a question for the jury in this case whether a prudent man, upon such an assumption, might not judge it safe to cross in front of a trolley-car 300 feet away, although coming at great and ille-gal speed. Upon the assumption of the existence of

means to reduce speed and to stop, and of a servant employed to make use of such means, it would be absurd to say that one was bound to refrain from crossing for fear the servant would not make use of the means." (*Consolidated Traction Co. v. Lambertson*, 59 N. J. L. 297, 299, 36 Atl. 100.)

"It would be palpable negligence for the driver of a wagon or carriage to recklessly drive upon a crossing in a race with an approaching car. In all such cases it should be held that the driver of the vehicle takes his chances of a collision, and he ought to have no remedy if an accident occurs. But no principle of law or common sense requires that the driver of a vehicle should stop his team and wait the passing of an approaching car if he discovers the car on the line at such a distance as that, in the exercise of reasonable care and prudence, he may safely proceed on his way and cross the track. Much is said in argument about the question whether the rule requiring a person about to cross the track to stop and look and listen for an approaching car, and whether the rule applicable to a railroad operated by trains and steam locomotives should apply to an electric railroad. That question is not in this case. There is no claim that plaintiff did not see the approaching car. He saw it when it was 300 feet away from the crossing. The question is, did he use proper care and caution in determining whether he could safely cross the track? That was a fair question, under the evidence, for the jury to determine." (*Patterson v. Townsend & Son*, 91 Iowa, 725, 726, 59 N. W. 205.)

See, also, *Schmidt v. The Burlington, C. R. & N. Ry. Co.*, 75 Iowa, 606, 39 N. W. 916; *Gratiot v. The Mo. Pac. R'y Co.*, 116 Mo. 450, 21 S. W. 1094, 16 L. R. A. 189; 2 Thomp. Neg., 2d ed., § 1450.

What, then, was the situation of the street-sweeper in this case? The car was hurtling through space at a rate of speed far in excess of that allowed by the city law. An observation of it would not have indi-

cated peril and would not have dictated haste in crossing unless this high and dangerous rate of speed were appreciated. The sweeper had the right to rely upon a compliance with the law on the part of the company and to believe the speed of the car to be within twelve miles per hour, and under the control of the motorneer. The mingling lights and shadows of the night necessarily rendered vision inaccurate and uncertain; the man was not bound to regard a shout as a street-car signal; and other sounds were opposed to the noise of the flying car. Under these circumstances an unexpected and unlawful acceleration of speed might well deceive a reasonably prudent and careful man and delude him into danger; and if he were cognizant of the true rapidity of the car's motion he might nevertheless feel secure that it would be reduced to the lawful rate by a vigilant motorneer, in command of efficient appliances in good repair, before it could overtake him.

So considered, the facts already narrated, which seem especially to militate against a belief in the carefulness of the deceased, are not irreconcilable with a liability on the part of the company. In the light of such facts different minds might arrive at different conclusions as to what might, under all the circumstances, have been done without blame. The question, therefore, is not one of law but is one of fact, and the general verdict against the company is conclusive.

Some complaint is made of instructions given and refused at the trial. Under the view of the case taken above, the instruction given relating to reciprocal rights upon the streets could not have been prejudicial. In the next instruction given the allusion to the safety of the passengers occurs in a recital of duties evidently taken from the city ordinance granting

the defendant the right to use the streets, and could not have misled the jury ; and the objection that this instruction permitted a recovery if the defendant "negligently failed and neglected in any manner to care for the safety of the life and personal safety of the plaintiff's intestate" ignores the succeeding words "as alleged."

The subject-matter of two of the instructions refused, referred to in the defendant's brief, was covered by instructions given, and the third conflicts with the views set forth above.

Since no material error appears to have been committed by the district court, its judgment is affirmed.

All the Justices concurring.