HUTCHINSON PURITY ICE CREAM COMPANY, Appellee, v. DES MOINES CITY RAILWAY COMPANY, Appellant.

**RAILROADS:** Accidents at Crossings—Street Railways—Rate of
1  Speed—Failure to Stop—"Last Clear Chance". A verdict sustainable on either of two theories must, of course, stand. Evidence reviewed and held to sustain a verdict, either on the theory (a) that plaintiff was not negligent and defendant was negligent, or (b) that plaintiff was negligent, but that defendant, after it discovered plaintiff's position of danger, either (1) ran its car at a dangerous and uncontrollable rate of speed or (2) ran the car at a proper speed, but negligently failed to stop.

**RAILROADS:** Accidents at Crossings—Negligence of Driver—"Last
2  Clear Chance". He who has the last clear chance of avoiding an injury, notwithstanding the negligence of the other party, is deemed responsible for it. So held where a motorneer, knowing that plaintiff was negligently approaching and going upon the tracks, and likewise knowing that plaintiff was disregarding the warning signals, failed to exercise reasonable diligence to stop and avoid the accident.

**RAILROADS:** Accidents at Crossings—"Last Clear Chance"—Mat-
3  ters in Issue—Conduct of Motorneer—Ringing of Bell. Under quite general allegations as to defendant's negligence in not stopping its car after discovering plaintiff's negligence, *held* that the conduct of the motorneer, and whether he did or did not ring the bell, was in issue and properly submitted to the jury.

**NEGLIGENCE:** "Last Clear Chance"—Inaccuracy in Stating Rule—
4  Harmless Error. A "last clear chance" instruction, possibly inaccurate in that it referred to what defendant "should have known", is harmless when, without dispute, defendant saw plaintiff when at a distance of 600 feet, and thereafter at all times had full knowledge of plaintiff's conduct.

**NEGLIGENCE:** Contributory Negligence—"Last Clear Chance"—
5  Concurrent Negligence. Concurrent negligence of both parties excludes the doctrine of "last clear chance". *Held,* the negligence in question was not concurrent.

RAILROADS: Accidents at Crossings — Contributory Negligence.
6   Evidence reviewed, in a case where plaintiff was injured upon a
    street railway crossing by a collision, and *held* that the question
    of plaintiff's contributory negligence was for the jury, though the
    approach of a street car was visible for a distance of 600 feet,
    plaintiff's attention being diverted by the approach of another
    car from the opposite direction.

*Appeal from Polk District Court.*—HON. CHARLES A.
DUDLEY, Judge.

SATURDAY, NOVEMBER 20, 1915.

ACTION at law to recover damages to an automobile truck
owned by plaintiff, due to a collision with one of defendant's
street cars. The defendant denied all negligence and pleaded
contributory negligence on the part of the driver of the auto-
mobile. The case was tried to a jury, resulting in a verdict
for the plaintiff in the sum of $211, upon which judgment
was rendered, and defendant appeals.—*Affirmed.*

*Parker, Parrish & Miller,* for appellant.

*R. L. Parrish,* for appellee.

DEEMER, C. J.—The negligence charged against the de-
fendant street car company was: "That the defendant's
employee in charge and who had the management and con-
trol of the car that ran into plaintiff's automobile truck was
guilty of gross carelessness and negligence in running said
car at a great rate of speed and in failing to stop said car
as soon as by the exercise of reasonable care it could have
stopped after the said employee saw or by the exercise of
reasonable care could have seen the danger of said collision
and thus avoided the injury."

This was amplified somewhat by a recitation of evidenti-
ary facts to the effect that, after plaintiff's driver had stopped
the automobile which he was driving upon one of the de-
fendant's tracks, the motorman in charge of the street car
failed and refused to stop or in any way lessen the speed of

said car, but allowed the car to continue upon its westward course and with great speed ran upon and into and struck plaintiff's truck with such force and violence as to carry said truck west along said avenue for a distance of forty-five or fifty feet from the Thirty-fifth Street crossing, before defendant's car was stopped.

The testimony introduced upon the part of the plaintiff tended to show that, on the day of the accident, plaintiff, through its employee, one McCarthy, whose duty it was to drive an automobile truck, was delivering ice cream at what was known as Reppert's Drug Store, situated at the northwest corner of the intersection of Thirty-fifth Street and Ingersoll Avenue, in the city of Des Moines. This drug store was on the lot line of the two streets, with a door in the corner of the building. The driver of the machine backed it up to the store from Thirty-fifth Street on the curb, so as to clear the sidewalk running east and west. He stopped the car north of this sidewalk and as near the southeast corner of the building as he could get and leave the sidewalk clear for travel, the engine headed almost directly east. At this point, Thirty-fifth Street runs practically north and south, and Ingersoll Avenue, east and west. Defendant occupied Ingersoll Avenue at this point with a double track, the east-bound cars running on the south track and the west-bound on the north one—the tracks being approximately 10 feet apart. It took the employee about half an hour to make the delivery of his goods, and upon completing his task he came out of the building, got upon the truck, started his engine, and, as he did so, he looked to the east to see if a west-bound car was approaching. He could have seen a car at this point quite plainly for a distance of something like 600 feet. Beyond that point, an approaching car was more or less obscured, for the reason that at 600 feet, the car would be on the crest of a grade. By careful examination, he might have seen a car something like 800 feet away. The driver testified that he saw no car and

1. RAILROADS: accident at crossing: street railways: rate of speed: failure to stop: "last clear chance."

he swung his automobile to the south and took practically the middle of Thirty-fifth Street, intending to cross the street car tracks. As he neared the crossing, he noticed a car coming from the west less than a block away, and, judging from the action of the motorman and his manner of handling the car that he was not going to stop for Thirty-fifth Street, he concluded not to chance crossing ahead of the car and applied his brakes, including the emergency, with which the car was equipped, intending to wait until the east-bound car had passed. He said that the front wheels, when he stopped, were just over the south rail of the north track, and the rear ones some distance to the north of the north rail. At this instant, he heard a noise, and, looking to the eastward, he for the first time discovered a west-bound car, running at a high rate of speed, bearing down upon him. When he first saw this car, it was about 270 feet from where his truck was standing. As soon as he saw it approaching, he released his emergency brake and attempted to back off the track, but was unable to do so; and the street car struck the automobile just ahead of the center, pushing or throwing it something like 45 feet westward of the center line of Thirty-fifth Street.

He testified that the street car was running at the rate of 30 miles an hour; he also testified, as an expert motorman having experience, that a car going at 20 to 30 miles per hour could be stopped within 3 car lengths, or approximately 90 feet. This witness was corroborated to some extent by other testimony, and other witnesses stated that the automobile was standing still, waiting for the east-bound car to pass, for some little time before it was struck by the west-bound car. Other witnesses testified that the street car was running at from 12 to 15 miles per hour, and some of the testimony indicates that it was going at even less speed. The motorman testified that he was going about 8 miles per hour and that, at this rate of speed, the car could not have been stopped short of 100 feet. There was some testimony that the truck driver heard no ringing of bell or sounding of gong upon the street car, and

also some testimony that the street car did not slacken its
speed as it came to Thirty-fifth Street.

Defendant's witnesses gave quite a different version of
the affair.  The motorman testified:

"The motor truck, when I first saw it, was just east of the
drug store, just a few feet from the south curbing of Thirty-
fifth Street; that is, it would be the south side of the drug
store, the curbing that runs east and west."  Q.  "Which
way was he headed when you saw him?"  A.  "He was
headed south."  Q.  "Just tell the jury what happened as
your car came up to that street intersection."  A.  "Well,
this time this man with the motor truck was going at a
slow rate of speed towards the track.  When he got within
about 12 feet of the track, his car slowed down and ap-
parently he was going to stop.  The car did come almost to
a stop and I figured that he was going to stop there and let
me go by, and I released my air on my car, and of course she
naturally went a little bit faster.  And he kept coming on to
the track, and I saw that I was going to hit him and I applied
the brakes the second time, but I was too close to do any good."
Q.  "When you first saw this man, did you put your brakes on
then?"  A.  "Yes, sir."  Q.  "And then when he came towards
the track and stopped, as you say about 12 feet away, ap-
parently came to a standstill, was it then that you released
your brakes?"  A.  "Yes, sir."  Q.  "And then when he started
up again, did you put your brakes on again then?"  A.  "Yes,
sir."  Q.  "What do you call it?"  A.  "I give it the
emergency; that is, applying the brakes to their full extent."
Q.  "Was that the quickest way to stop your car?"  A.  "Yes,
sir; that is the quickest way, and it is the only way I had time
to do anything.  My car and the truck collided.  My car pushed
the motor truck about 10 feet.  This motor truck, at the time
of the collision, was on the west side of Thirty-fifth Street.
He came straight south from the curb line."

It was for the jury to determine which version of the acci-

dent was the correct one, and, for the purpose of determining whether the verdict has enough support in the testimony, we must adopt that view most favorable to plaintiff. There was enough, we think, to justify a finding that, after the motorman discovered the automobile upon the track and in a position of peril, either he was running his car at a high and dangerous rate of speed, so that he did not have it under proper control, or the rate of speed was not excessive, but he (the motorman) was negligent in not stopping the car after seeing the perilous position of the motor truck. In either event, the fact that the driver of the automobile had negligently driven his car into a dangerous position would not excuse the defendant. Moreover, although the case is not so plain as on the other theory, the jury might have found that the driver was not guilty of contributory negligence in going upon the track in the manner he did, having looked for cars from both directions before going upon the track, and having his attention diverted by the car approaching from the west, and that the accident was due to the negligence of the motorman in running his car at a high and dangerous rate of speed. There was sufficient testimony to take the case to the jury.

II. The trial court submitted the case on both theories, but qualified one with the statement that

2. RAILWAYS: accidents at crossing: negligence of driver: "last clear chance."

contributory negligence on the part of the driver of the auto would not defeat the action:

"If the motorneer in charge of the car of the defendant west bound saw, or by the exercise of reasonable diligence could have seen, the driver of the auto truck of plaintiff approaching the crossing about to use the same, it was the duty of the motorneer to warn the driver of the auto truck of his approach by ringing the bell, in time to have enabled the driver of the truck, in the exercise of reasonable care on his part, to have stopped his truck before going onto the tracks of defendant; and if the motorneer of the defendant, after having rung

his bell, if he did ring his bell, saw that the driver of the auto truck paid no attention thereto but continued to drive his truck forward toward the tracks of the defendant, regardless of the warning given by the motorneer, if he gave any warning, it was the duty of the motorneer to stop his car, if, by the exercise of reasonable diligence on his part, he could have stopped the car, and avoided the collision; but, if, by the exercise of reasonable diligence on his part, the motorneer could not stop his car after he saw the driver of the auto truck paid no attention to the said warning given and was about to go upon the tracks of defendant, the motorneer was not negligent.''

Appellant's counsel complain of this instruction because it, in effect, announces the doctrine of "last clear chance", which they insist is not in the case. The petition from which we have quoted makes such a case, although it is not so denominated, and there was sufficient testimony to justify the giving of the instruction. It is also claimed that the instruction is erroneous for the reason that it refers to the duty of the motorneer to ring the bell on the street car, failure to do so not being alleged in the petition as a ground of negligence. The petition, in its allegations of negligence on the part of the motorneer, is quite broad, and has reference to what he did or failed to do after discovering the auto truck. The instruction has reference to this issue, and the motorneer's conduct after discovering the situation of the auto, including the ringing of the bell, was, as we think, in issue. There was some testimony that he did not ring the bell; but whether there was or not, the question of the care taken by the motorneer after discovering the auto was for the jury. There was, we think, no error in this respect.

Again, it is said that the instruction is faulty because it holds the motorneer responsible for what he should have

3. RAILWAYS: accidents at crossing: "last clear chance": matters in issue: conduct of motorneer: ringing of bell.

seen, rather than for what he did see.    There might be force
in this contention, were it not for the fact that
the motorneer himself testified that he did
actually see the auto truck and driver from
the time he left the drug store, and that he
followed him down to the time of collision.

**4. NEGLIGENCE:** "last clear chance": inaccuracy in stating rule: harmless error.

Appellant's counsel also insist that the doctrine of last
clear chance is not involved, for the reason that the negli-
gence of the driver was concurrent with that of the motorneer,
and that being concurrent, plaintiff is not en-
titled to recover.    Under defendant's version
of the affair, this would be true, but under
plaintiff's testimony, it is not so.    The testi-
mony tended to show that the driver's negli-
gence had expended itself; that he had stopped his machine
on the north track, trying to avoid a collision with the east-
bound car; that his attention was diverted by that car; and
that he was making no effort to get off the north track, at the
time the west-bound car bore down upon him, as the motorneer
knew, or should have known.    Such facts bring the case
clearly within the rule of "last fair chance".    *Wolf v. Chi-
cago, G. W. R. Co.*, 166 Iowa 506; *Wilson v. Illinois C. R. Co.*,
150 Iowa 33; *Welsh v. Tri-City R. Co.*, 148 Iowa 200; *Brug-
geman v. Illinois C. R. Co.*, 147 Iowa 187.

**5. NEGLIGENCE:** contributory negligence: "last clear chance": concurrent negligence.

III.    As already intimated, the court did not err in sub-
mitting to the jury the question of the driver's contributory
negligence.    He testified that he looked to the east, before start-
ing across the street car tracks; that he could
not see an approaching car more than a block
to the east; that this car was coming at a high
rate of speed; that his attention was diverted
by the car approaching from the west; and that he stopped as
he did, because of the rapid approach of that car, which to all
appearances was not going to stop at Thirty-fifth Street.
Although we may think that the preponderance of the testi-
mony shows another state of facts, the court was bound to

**6. RAILWAYS:** accidents at crossing: contributory negligence.

instruct on plaintiff's theory; and, upon that theory, the questions of negligence and contributory negligence were for the jury. *Schmidt v. Burlington, C. R. & N. R. Co.*, 75 Iowa 606; *Taylor v. Wabash R. Co.*, 112 Iowa 157; *Buehner v. Creamery Package Co.*, 124 Iowa 445; *Van Camp v. City of Keokuk*, 130 Iowa 716.

IV. Complaint is made of the failure of the court to give certain instructions asked. It is enough to say, in answer to this, that those which were correct were substantially given by the court in its charge. Indeed, Instruction No. 9 asked by the defendant is substantially the same as No. 6 given by the court, of which defendant complains. The substance of No. 5, as asked, was given in No. 6; although it referred more directly to defendant's testimony as to how the accident occurred than did the one given. However, the jury could not have found for plaintiff under Instruction No. 6 without disregarding or disbelieving defendant's testimony as to how the accident occurred. On the whole record, we discover no error of which defendant may justly complain. The judgment must, therefore, be and it is—*Affirmed.*

LADD, GAYNOR and SALINGER, JJ., concur.